· [L. A. Nos. 1007, 1008, 1010. Department One.—May 10, 1902.]

## L. A. 1007—MATTHEW GAGE, Respondent, v. J. J. GUNTHER et al., Appellants.

## L. A. 1008—MATTHEW GAGE, Respondent, v. OTTO H. NEWMAN, Appellant.

## L. A. 1010—MATTHEW GAGE, Respondent, v. W. E. ATWATER et al., Appellants.

PUBLIC LANDS—DECISION OF LAND DEPARTMENT—QUESTIONS OF FACT.— The decision of the land department of the United States upon any question of fact, in determining the right of any person to receive a patent for any of the public lands under the laws of the United States, is conclusive upon all other tribunals, in the absence of fraud, mistake, or imposition in obtaining the patent.

ID.—QUESTIONS OF LAW—EQUITY PROCEDURE.—If, in making its determinations of fact, the land department has disregarded the law applicable thereto, or has erred in its construction of the law, or by mistake has issued to one person a patent, which, upon undisputed facts, should have been issued to a contestant, the patentee will be held a trustee for the contestant in proceedings to be taken in a court of equity, and governed by the rules of equity procedure.

ID.—CONTEST OF DESERT-LAND CLAIM—PATENT—EJECTMENT—CROSS-COMPLAINTS—SUPPORT OF JUDGMENT.—Where a desert-land claimant, upon final decision of a contest in his favor by the land department, obtained a patent, upon which he brought an action of ejectment against the contestants, who filed cross-complaints therein, alleging fraud of the plaintiff and misconstruction of the law by officers of the land department, findings sustained by evidence against the allegations of fraud, and showing that there was no misconstruction or misapplication of the law to the facts in the final decision of the land department, support the judgment for the plaintiff in ejectment and it must be affirmed.

ID.—DECISION BY SECRETARY OF INTERIOR—REVIEW BY SUCCESSOR.—The decision of a former Secretary of the Interior against the desert-land claimant was not *res judicata,* so as to deprive his successor in office of jurisdiction to review the decision and re-examine the questions passed upon by his predecessor; and if, in his opinion, an error of law had been committed in the matter, it was his duty to set aside the decision and to render another in favor of the desert-land claimant in conformity to law.

ID.—SUPERVISORY AUTHORITY OF SECRETARY.—The supervisory authority conferred by Congress upon the Secretary of the Interior over the disposal of the public lands, and to order the issuance of patents

therefor, under the authority of the government, is not lost by the fact that he has erred in a former decision, or that he has repeated the error by denying a motion to set it aside, or to re-examine his action. So long as the matter remains pending, there is no limit to the power of the Secretary of the Interior to review any rulings made in relation thereto.

ID.—RULES OF PROCEDURE—POWER OF SECRETARY NOT LIMITED.—The authority of the Secretary to review or set aside a former decision cannot be taken away by any rules of procedure which he may formulate, and he cannot divest himself of his supervisory duty by any rule of his own creation; and rules of procedure established by him may be suspended or disregarded in any particular case whenever the purposes of justice require it.

ID.—QUESTIONS OF FACT.—Matters of procedure before the land depart· ment—such as the regularity of its sittings, whether a paper was filed in accordance with its rules, whether a proper or sufficient notice of hearing upon any motion was given, whether the evidence before it was competent or proper to be considered—are questions of fact, the decision of which cannot, in the absence of fraud, be reviewed in any other forum.

ID.—EQUITABLE RIGHTS OF DESERT-LAND CLAIMANT—BOARD OF EQUITABLE ADJUDICATION.—Where the desert-land claimant had substantially reclaimed the land, but had failed strictly to comply with the terms of the statute, he has the right, under the law, in the absence of an adverse claim, to have his equitable claim passed upon by the commissioner and referred to the board of equitable adjudication; and the determination of the commissioner and the board of adjudication in his favor is a sufficient answer to any claim of the government that the statute had not been strictly complied with, and entitles him to a patent.

ID.—ERRONEOUS DECISION OF FORMER SECRETARY—PROPER RULING BY SUCCESSOR.—Where the commissioner of the general land office determined that the desert-land claimant had equitable rights, and that the case should be referred to the board of equitable adjudication, and the former Secretary of the Interior, without touching upon the opinion of the commissioner with regard to equitable rights, erroneously reversed his decision, upon the ground that the law had not been complied with when the contest was begun, the action of his successor in setting aside such decision, and ordering the case submitted to the board of equitable adjudication was correct and involved no misconstruction of the law.

ID.—ADVERSE CLAIMS—INFORMATION TO GOVERNMENT.—Where the contestants simply brought information to the government that the desert-land claimant was in default, they did not become adverse claimants to the land by virtue of the contest, and could not, by a successful contest so instituted, acquire a preferred right of entry on the land embraced in the contest, and the Secretary of the Interior was not precluded from referring the case to the board of

equitable adjudication, upon the ground that there was an adverse claim to the land.

ID.—ADVERSE ENTRIES—SUBJECTION TO DESERT ENTRY.—The contestants could not become adverse claimants of the desert land segregated under the previous entry of the desert-land claimant, by attempted adverse entries of the land under the homestead and timber-culture acts. Any claim of right on their part was subordinate to the previous entry until it was finally determined; and the decision of the board of equitable adjudication, that the desert-land claimant was entitled to a patent, necessarily determined that his entry had never lapsed, and that there was no time when the contestants could become adverse claimants to the land.

ID.—IMMATERIAL FINDINGS—FRAUDULENT AND SPECULATIVE ENTRIES.—Findings that the homestead and timber-culture entries were fraudulent and speculative were immaterial, and the fact that there is no evidence to support them is not ground for a reversal of the judgment in favor of the patentee in ejectment, which is fully supported by findings sustained by evidence.

ID.—APPEAL—ARGUMENT—DISRESPECTFUL BRIEF STRICKEN FROM FILES.—A brief upon appeal which contained expressions disrespectful to the officers of the land department and to the judge of the superior court before whom the case was tried, and derogatory to their character, was ordered stricken from the files.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial. J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

R. E. Houghton, for Appellants.

Purington & Adair, Garber & Garber, Garber, Creswell & Garber, and Harris & Swanwick, for Respondents.

HARRISON, J.—The plaintiff brought these actions to recover from the appellants the possession of section 30, township 2 south, range 4 west, S. B. M., in the county of Riverside, for which he had received a patent from the United States. The appellants denied his title to the demanded premises, and alleged as a defense, and also by way of cross-complaint, certain facts, by virtue of which they claimed that they were entitled to receive patents for the land, and that the plaintiff should be held to hold the same in trust for them, and be decreed to convey the land to them.

At the trial of the causes the following facts were established: The plaintiff filed with the register and receiver of the land office on March 1, 1882, an application under the United States Desert Land Act of 1877, for entry of the section in controversy. He did not complete the reclamation of the land so as to bring water thereon within the period of three years required by that act, and on January 23, 1886, Gunther, Newman, and Atwater, the appellants herein, filed affidavits setting forth that fact, and asked that his entry of the land be declared canceled and forfeited to the United States. The register and receiver refused to entertain the contest, on the ground that there was at that time pending before the Secretary of the Interior an appeal involving the plaintiff's right to enter the land. Gunther, Newman, and Atwater appealed from this decision to the commissioner of the general land office, and on March 9, 1886, that officer affirmed the action of the register and receiver. From this decision they appealed to the Secretary of the Interior. Before this appeal was heard the former appeal, involving the plaintiff's right to enter the land, was decided in his favor, and thereafter, January 25, 1887, the commissioner made an order in which, after referring to said decision, he directed a hearing to be had before the register and receiver to determine whether the land embraced in the plaintiff's entry had been irrigated within the time required by law. Upon the hearing had in pursuance of this order, the register and receiver rendered their decision, March 20, 1888, that the land had not been so irrigated, and recommended that on that account the entry should be canceled. Gage appealed to the commissioner of the general land office, and on March 27, 1890, that officer reversed the decision, holding that the contestants had no adverse claim to the land in dispute within the meaning of the law, and that, owing to the equities shown by Gage upon the hearing, the case should be referred to the board of equitable adjudication, for the purpose of determining whether under the circumstances of the case his failure to reclaim the land within the time should defeat his right to a patent. From this decision Gunther, Newman, and Atwater appealed to the Secretary of the Interior, and on August 1, 1892, that officer reversed the decision of the commissioner.

Gage thereupon filed a motion with the Secretary of the Interior for a review of his decision, and on March 3, 1893, this motion was denied and a copy of the decision thereon sent to the register and receiver, March 15, 1893. Secretary Noble, by whom these decisions were made, was succeeded in the Department of the Interior, on March 4, 1893, by Secretary Smith.

At the time that Gunther, Newman, and Atwater filed their contest against the entry of Gage, July 23, 1886, they also presented to the register and receiver affidavits, and filed applications thereunder, for the purpose of making homestead and timber-culture entries for different portions of said section. The register and receiver refused to entertain said applications upon the ground of the afore-mentioned appeal before the Secretary of the Interior with reference to Gage's right to enter the land. From this refusal they took an appeal to the commissioner of the general land office, and on March 9, 1886, that officer affirmed the action of the register and receiver. After the rendition of the Secretary's decision, August 1, 1892, but before the decision had been transmitted to the register and receiver,—viz., August 3, 1892,—Gunther, Newman, and Atwater entered upon the land, claiming the right to its possession by virtue of the entries theretofore offered by them, and thereafter cultivated the same, and afterwards gave notice that they would make final commutation proof under their said homestead entries in accordance with the Homestead Act. At the hearing upon the taking of this proof Gage filed a protest against their claims, but the register and receiver held that they had complied with the law and were entitled to enter the land under the Homestead Act. From this decision Gage appealed to the commissioner of the general land office, and on August 4, 1894, that officer affirmed the decision and directed that they should be permitted to make their payment, and receive their final certificates for said land. From this decision Gage appealed to the Secretary of the Interior, and on April 13, 1895, while this appeal was pending, filed with the Secretary a petition for a reconsideration of the evidence upon the contest against his desert-land entry, and a review of the decision of August 1, 1892, and for a consolidation of the several cases. A protest against this application and a brief thereon were made by the

appellants herein and filed with the Secretary of the Interior, and on September 26, 1895, the Secretary rendered a decision by which he set aside the decision of his predecessor, Secretary Smith, and reopened the case upon the appeal from the decision of the commissioner of the general land office in reference to Gage's desert-land entry, and directed that he be allowed to carry his final proof before the board of equitable adjudication, to be passed on by them, and that in the mean time the entries of Gunther, Newman, and Atwater should stand suspended, to be disposed of as should be indicated by the finding of that board. In the opinion rendered by him (*Gage* v. *Atwater*, 21 Land Dec. Dep. Int. 211), will be found a fuller statement of the facts and history of the controversy between the respondent and appellants herein. Under this decision the commissioner of the general land office directed the register and receiver that the said homestead entries be suspended to await the action of the board of equitable adjudication upon Gage's final proof, and that the timber entries being in conflict with Gage's final proof, should also stand suspended. A motion on behalf of the appellants herein for a review of this decision, was denied by the Secretary of the Interior, October 21, 1895. Upon the reference of Gage's final proof to the board of equitable adjudication, the recommendation of the commissioner of the general land office that a patent be issued to him was approved April 20, 1896, and on April 21, 1896, the patent therefor was issued to him.

Very extended and elaborate briefs have been filed on behalf of the respective parties, wherein numerous questions have been discussed, with citations of authority in their support. The greater number of these questions are, however, subordinate to a few ultimate propositions and the principles controlling their determination and need not be specifically considered.

The land department of the United States has been created as the tribunal for determining the right under the laws of the United States of any person to receive a patent for any of the public lands, and that tribunal is vested with jurisdiction to determine all questions of fact that may arise in any controversy respecting such right. As a necessary result therefrom, the determination by this tribunal of any question of fact is conclusive upon all other tribunals wherever such questions

may be presented. The character of the land, whether it is subject to entry under the laws invoked therefor, the qualifications of the entryman, the extent of the improvement or reclamation made by him, whether such improvement is a sufficient compliance with the statutory provisions for entitling him to a patent, or whether it has been made within the time prescribed by statute, or, if not, whether the reasons offered by him are sufficient to condone such failure, or any default on his part, whether he has been guilty of laches, or exercised sufficient diligence,—are all questions of fact to be submitted to and determined by the land department, and the issuance of a patent for the land is a final determination by that tribunal of the existence of all facts depending upon testimony which are necessary to entitle him to the patent, and, in the absence of fraud, mistake, or imposition, such facts are not subject to a re-examination in any other tribunal. If, however, in making such determinations of fact, that tribunal has disregarded the law applicable thereto, or has erred in its construction of the law, or by reason of mistake has issued to one person a patent for the land, which upon undisputed facts should have been issued to another who has contested his claim and has shown himself entitled to the patent, the person in whose favor the patent was issued will be held to hold the land for the benefit of the one to whom it should have issued. Proceedings for this purpose are, however, to be taken in a court of equity, and are to be governed by the rules of equity procedure.

The allegations of fraud relied upon by the appellants were found against them by the superior court, and the evidence set forth in the record sufficiently sustains those findings. The only question to be considered in support of their defense and cross-complaint is therefore their claim of a misconstruction of law on the part of the officers of the land department while the proceedings were pending before that tribunal, or its misapplication to the facts established before it.

The proposition chiefly relied upon by them is, that the denial of Secretary Noble, on March 3, 1893, of the motion to review his decision of August 1, 1892, reversing the decision of the commissioner of the general land office, was a final determination of that question; that the decision then made became *res judicata,* and that Secretary Smith had no juris-

diction thereafter to review the same; and in support of this claim they rely upon certain rules of practice or procedure formulated by the land department, under which it is claimed that a re-review of a decision by the Secretary is unauthorized. Without determining whether these rules are susceptible of this construction, we are of the opinion that it was not only within the power of Secretary Smith to receive the petition of Mr. Gage for a re-examination of the questions passed upon by his predecessor, but that, if he was of the opinion that an error of law had been committed in the matter, it was his duty to set aside the former decision. If by reason of any misinterpretation of the law on the part of Secretary Noble, such an error had supervened as would, in case patents had been issued to the contestants, authorize Gage to apply to a court of equity for a rectification of that error, Secretary Smith was not required to perpetuate the error and issue the patents, notwithstanding his conviction of the error, but could himself correct it by setting aside the decision and thereafter proceeding in accordance with the law. Congress has conferred upon him a supervisory authority over the disposal of the public lands, and has placed the commissioner of the general land office under his direction in the matter of issuing patents for all grants of land under the authority of the government. (Rev. Stats. U. S., secs. 441, 453; *Knight* v. *U. S. Land Assn.,* 142 U. S. 161.) The supervisory authority thus given to the Secretary is not lost by the fact that he has erred in a former decision, or that he has repeated the error once or many times by denying a motion to set it aside or to re-examine his action. In the case last cited, Mr. Justice Lamar, quoting from an opinion given by him when he was Secretary of the Interior, says: ''The statutes in placing the whole business of the department under the supervision of the Secretary, invest him with authority to review, reverse, amend, annul, or affirm all proceedings in the department having for their ultimate object to secure the alienation of any portion of the public lands, or the adjustment of private claims to lands, with a just regard to the rights of the public and of private parties. Such supervision may be exercised by direct orders or by review on appeals. The mode in which the supervision shall be exercised, in the absence of statutory direction, may be prescribed by such rules and regulations as the Secretary

may adopt. When proceedings affecting titles to lands are before the department, the power of supervision may be exercised by the Secretary, whether these proceedings are called to his attention by formal notice or by appeal. It is sufficient that they are brought to his notice. The rules prescribed are designed to facilitate the department in the dispatch of business, not to defeat the supervision of the Secretary. For example, if when a patent is about to issue the Secretary should discover a fatal defect in the proceedings, or that, by reason of some newly ascertained fact, the patent if issued would have to be annulled, and that it would be his duty to ask the attorney-general to institute proceedings for its annulment, it would hardly be seriously contended that the Secretary might not prevent the execution of the patent." (See, also, *Orchard* v. *Alexander,* 157 U. S. 372.) Whether the circumstances in any particular case are such as to justify him in disregarding the rules, or in refusing to disregard them, is a question of fact to be determined by him, and his determination thereon, like his decision of other questions of fact, is conclusive upon other tribunals. This rule is, however, subject to the qualification that the land department may not by such disregard of its rules deprive a party of an opportunity for a hearing upon the question before it. If, however, upon such subsequent hearing a full opportunity is afforded the parties for presenting the facts of their case, they cannot complain that by granting a review or rehearing of the case there was any misconstruction of the law by which they were deprived of any right. The qualification of the rule here referred to has no application, however, in the present case, as after Secretary Smith had set aside the decision of his predecessor, notice was given to the appellants herein, and they did have an opportunity to be heard, and did appear and file their opposition to the application of Gage.

The principle of *res judicata,* invoked by the appellants, has no application to orders or rulings made from time to time during the pendency of an action or proceeding in the same tribunal. That principle is to be invoked where there has been a final decision or judgment in some other proceeding between the same parties. While an action or proceeding is pending before the same tribunal, there is no limit to its power to review any rulings it may have made, or to permit a reargument upon any proposition involved in the proceed-

ing; and whether such error was committed by the officer presiding over the tribunal or by his predecessor in office is immaterial. The error is that of the office, and not of the individual who is its incumbent. (*Knight* v. *U. S. Land Assn.*, 142 U. S. 161.)

Neither can the authority of the Secretary to review or set aside the decision be taken away by any rule of procedure which he may formulate. There is no statutory inhibition against his granting a rehearing or a review, or the number of times a motion therefor may be made, or any provision relating to the time within which a rehearing may be granted, or within which the former decision may be set aside. Congress has imposed this supervisory duty upon him, and he cannot divest himself of it by any rule of his own creation. Rules of practice or procedure that are not established by the law creating the tribunal, but are formulated by the tribunal before which the practice is had, may be disregarded by it in any particular case without infringing any right of the litigant. Such rules are for the convenience of the tribunal, as well as of litigants, and are adopted to facilitate the transaction of business, and may at any time be suspended or disregarded by the tribunal whenever the purposes of justice require it. (*Pickett* v. *Wallace*, 54 Cal. 147; *Parsons* v. *Venzke*, 4 N. D. 452,[1] affirmed 164 U. S. 89; *United States* v. *Breitling*, 20 How. (U. S.) 252; *Knight* v. *U. S. Land Assn.*, 142 U. S. 161.) Matters of procedure before the land department—such as the regularity of its sittings, whether a paper was filed in accordance with its rules, whether a proper or sufficient notice of hearing upon any motion was given, whether the evidence before the tribunal was competent or proper to be considered—are questions of fact which, like the weight of the evidence, or the credibility of the witnesses before it, cannot, in the absence of fraud, be reviewed in any other forum.

At the hearing which, on January 25, 1887, the commissioner had directed the register and receiver to give to Gunther, Newman, and Atwater upon their contest of Gage's right to retain his entry, his right to be relieved from a failure to strictly comply with the terms of the statute was not a question before those officers, as they were directed merely to determine whether the land had been irrigated within the

[1] 50 Am. St. Rep. 669.

time required by law; but upon the appeal of Gage from their decision his right to such relief, and to have his right to a patent determined upon principles of equity and justice, was properly before the commissioner, and that officer upon ·an examination of the opinion of the register and receiver, . and of the facts before him, held that there was such a showing of equity as entitled him to relief, and that the case should be referred to the board of equitable adjudication. Upon the appeal from the decision of the commissioner, Secretary Noble held that, as the land had not been reclaimed within three years, his right to a patent had been lost. In his opinion he does not appear to have considered the equitable claim of Gage, but determined the appeal upon the ground that a strict compliance was necessary. The opinion of the commissioner that the case should be referred to that board, was not touched upon in his opinion, but he reversed the commissioner's decision upon the ground that the law had not been complied with at the time the contest was begun.

The provisions of sections 2450–2457 (Rev. Stats. U. S.), creating a board of equitable adjudication, and vesting it with jurisdiction to decide, upon principles of equity and justice, that a patent may issue, notwithstanding the entryman may not have strictly complied with the terms of the statute, if such failure is shown to have resulted from ignorance, accident, or mistake, is in effect a declaration that, so far as the government is concerned, the equitable claim of the entryman, if established to the satisfaction of that board, shall be sufficient answer to any claim on the part of the government that the statute has not been strictly complied with. There is no statutory provision that such failure shall be followed by a forfeiture of the land, but in these sections Congress has declared that, if there is no adverse claim to the land, the entryman may set up an equitable defense to a claim by the government, or any one on its behalf, that he has failed to comply with the terms of the statute; and if in the opinion of the commissioner such equitable defense is established, and his opinion is approved by this board, a patent for the land shall issue, notwithstanding his failure to comply strictly with the requirements of the statute. The entryman is thus given a right to have his equitable claim adjudicated by the commissioner, and, if determined in his favor, he

has the further right to have his decision submitted
to the board of equitable adjudication, as provided in section
2457, and if that board approves the decision he becomes
entitled to a patent. As it was under this view of the law
that Secretary Smith set aside the decision of his predecessor
and directed that Gage be allowed to have his case submitted
to that board, the claim of the appellants that there was a
misconstruction of the law cannot be sustained.

The Secretary was not precluded from referring the case
to the board upon the ground that there was an adverse claim
to the land. The appellants did not become adverse claim-
ants to the land by virtue of their contest against Gage's
compliance with the statute. In the language of the com-
missioner upon their appeal from the decision of the register
and receiver, "they had simply brought information to the
government that the defendant [Gage] was in default, and
wished an opportunity to prove such allegation." In this
construction of the law the commissioner acted in accordance
with the decision of this court in *Gray* v. *Dixon,* 83 Cal. 33,
where it was held that one who has successfully contested and
procured the cancellation of an entry made by another under
the desert-land law, does not acquire a preferred right of
entry on the land embraced in the contest. This construc-
tion was also concurred in by Secretary Smith when he re-
ferred the application of Gage to the board of equitable
adjudication, and held that any claim on the part of the
appellants to the land in controversy by virtue of the filing
of their affidavits of contest was subordinate and subject to
Gage's right to have his equities passed upon by that board.

Neither did the appellants become adverse claimants by
virtue of their attempted entry of the land under the Home-
stead and Timber-Culture acts. The register and receiver
refused to entertain their application to enter the land at
that time, on the ground that it had then been segregated
under the previous entry of Gage. Any claim of right on
their part to enter the land was subordinate to that of Gage,
and could not be entertained until his right had been finally
determined by the department. The decision of the board of
equitable adjudication, that Gage was entitled to a patent, of
necessity determined that his entry had never lapsed, and,
consequently, that there was no time at which the appellants
could have become adverse claimants to the land.

The appellants have objected to several of the findings of fact, upon the ground that they are not supported by the evidence introduced at the trial. These findings are, however, upon issues that were irrelevant or immaterial to the controversy between the parties, and the failure of the court to make any finding upon these issues, or a different finding thereon, would not authorize a reversal of its judgment. The judgment is sufficiently sustained by the findings, which are fully supported by the evidence. For example, we find no evidence in the record in case No. 1007 sufficient to support the following portion of finding LXXIX,—viz., "That the said homestead entry of said Gunther was fraudulent and speculative,"—or the following portion of finding LXXIX in case No. 1008,—viz., "That the said homestead and timber-culture entries of said Newman, and each of them, were fraudulent and speculative"; and it must be held that the court erred in this portion of its findings. As the judgments rendered in said actions are, however, sufficiently sustained by the findings of the court upon other issues before it, its error in these respects may be disregarded.

The opening brief on the part of the appellants in each of these cases contains expressions highly disrespectful to the officers of the land department and to the judge of the superior court before whom the cause was tried, and derogatory to their character. The experience and learning of the attorney by whom these expressions were made are such that it must be assumed that, in permitting them to be presented to this court, he was conscious of their impropriety, as well as of their being in violation of his duty as an attorney. That the appellants might not suffer from this offense on his part, we have, however, examined the briefs upon the questions involved in the appeal, but we cannot permit the briefs to remain as a part of the records of this court. It is therefore ordered that the opening brief on behalf of the appellants in each of the cases be stricken from the files.

The judgment and order denying a new trial are affirmed.

Van Dyke, J., and Garoutte, J., concurred.

Hearing in Bank denied.