## GLEASON *v.* WHITE.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 188.    Argued and Submitted March 16, 17, 1905.—Decided May 29, 1905.

Two official surveys of a tract of land bordering on navigable waters were,
    with an interval of thirty years, duly made, approved and filed in the
    Land Department at Washington.    By the earlier survey a fractional
    section was divided into two lots, by the later into seven.    These divisions
    conflicted.    After the later survey two patents were issued, one using
    the description in the first and conveying the entire fractional section,
    the other following the second survey and conveying only part of the
    section.    As to a portion of the ground these patents conflicted.    In an
    action at law in the state court the second patent prevailed as to the
    tract in conflict.

*Held* that, in the absence of findings of fact (there being evidence tending
    to show that the first patentee took with full knowledge of the two surveys,
    the later one having been made partly at least at his request, and it also
    appearing that by the decision he received the full number of acres to
    which he was by the earlier survey entitled and for which he paid), the
    judgment in favor of the second patentee for the part in conflict ought
    not to be disturbed.

In 1845 fractional township 53 south, range 42 west, in
Dade County, Florida, was surveyed and a plat thereof was
approved and filed in the office of the surveyor general in
Florida, and also in the office of the Land Department of
Washington.    By this survey fractional section 19 was di-
vided into two lots, numbered 1 and 2, containing 164.84
acres.    In 1875 a resurvey was made of the township, plats of
which were also duly approved and filed in the office of the

surveyor general in Florida and with the Land Department at Washington. By this new survey said section 19 was divided into 7 lots, containing in the aggregate 337.76 acres. The difference between the two surveys of section 19 is shown in the following plats:

Plat 1845.                      Plat 1875.

On June 24, 1878, a patent was issued to William H. Gleason, on a homestead application, for a tract described as lots 1 and 2 of section 19, containing 164.84 acres, according to the official plat of the survey of 1845. Plaintiff in error, who was plaintiff below, claims by deed from the patentee. On May 4, 1885, lot 5 of section 19, according to the survey in 1875, was patented by the United States to Florida as swamp land, and thereafter deeded by the State to the defendant. In 1898 this

action to recover a part of lot 5 was commenced in the Circuit Court of the Seventh Judicial Circuit of Florida, in and for Dade County. The case was tried by the court without a jury; a judgment rendered for the defendant was affirmed by the Supreme Court of the State, and thereafter brought to this court on writ of error. Included in the action was lot 1 of section 19, as shown by the plat of 1875, but as judgment was rendered for the plaintiff in respect to that tract, it is unnecessary to further refer to it. There was a stipulation as to certain facts, with a provision that testimony of further facts might be received, and that the court might view the premises. The findings of the court recite that it viewed the premises, and upon the stipulated facts, and further testimony incorporated in a bill of exceptions, found generally for the defendant as to lot 5.

*Mr. George M. Robbins* for plaintiff in error:

The jurisdiction of this court is invoked because plaintiff in error asserted, in the state courts, his right to land in lot 5, under a patent issued by the United States and the statutes governing the survey and contents of divisions of the public lands, and this right was denied; and because the rights of the parties also involved a consideration of the swamp land grant of September 28, 1850. *St. Paul & Pa. R. R. Co.* v. *Schurmeier,* 7 Wall. 272; *Johnson* v. *Towsley,* 13 Wall. 72; *Live Stock Co.* v. *Springer,* 185 U. S. 47; *Kean* v. *Calumet Canal & Imp. Co.,* 190 U. S. 452.

The United States having once granted this land under a patent it did not pass by the swamp land patent to the State. *Stone* v. *United States,* 2 Wall. 525; *Hooper* v. *Scheimer,* 23 How. 235; *Gibson* v. *Chouteau,* 13 Wall 92.

The plat by which Gleason made his entry and received his patent showed that he had a water boundary to the entire fractional section on the east. The state court gives him a boundary on land (lot 5) for the south half of the north half of his entry. The rule is that where a section is made frac-

tional by the interference of water an entryman of land shown by the plat to be bounded by the water, takes to the water. This is not a case where the claimant would have to go into another section to reach the water, nor where there is a bayou which may be supposed to be the water meandered, instead of the shore of the bay; but it is a case coming clearly within the rule stated.

Meanders are run to define the general course of the shore and it is not customary to run ordinates from the meander lines to get the exact shore line, in making the government surveys. From this it results that shore lots sometimes contain a considerable excess and sometimes a considerable deficiency of land, as compared with the acreage returned by the surveyors. In the present case the patent was issued after the resurvey had developed the existence of the excess, and the fact that all the land in the fractional section was granted is evidence that the Government intended to relinquish any claim it might have to the excess land. Had it been the intention to set aside the survey of 1845 as a fraud on the Government, the patent to Gleason would not have been issued in 1878, after the survey of 1874 had exposed the liberality of the first survey in the matter of acreage returned. *Harden* v. *Jordan,* 140 U. S. 371; *Mitchell* v. *Smale,* 140 U. S. 406; *Kean* v. *Calumet Canal & Imp. Co.,* 190 U. S. 452.

The court erred in holding that the patent to William H. Gleason of all of fractional section 19, said township and range above, was not a decision of the Land Department that the greater part of each lot into which said section was divided by the plat under which the Gleason patent issued, was not swamp and overflowed land, so that no land in said section passed to the State under the swamp land act.

The court erred in holding that land which appeared to be covered by waters of Biscayne Bay by the official plat in effect September 28, 1850, the date of the swamp land grant, could have been granted by that act, and in holding that title to the land in controversy in lot 5, as shown by the survey of

1874, passed to the State by the act of 1850 and was state land at the time of the patent to Gleason, and that the subsequent patent to the State was but a recognition of a title existing in the State since 1850.

The foregoing assignments may be discussed together.

It was argued in the state courts by the defendant that when the Government patented lot 5, as per plat of 1875, to the State, this was an adjudication of its swamp character, and as the act of September 28, 1850 (known as the swamp land act) made a grant of swamp lands *in præsenti*, the title to the lot had really been in the State since September 28, 1850, and the attempt to patent it to Gleason in 1878 was abortive.

The fallacy is obvious. There was no lot 5 on September 28, 1850. At that time fractional section 19 was divided into but two lots, numbered 1 and 2. It was decided by the Land Department that neither of these two lots belonged to the State under the swamp land act, when the patent was issued to Gleason in 1878. The action of the Government in patenting the entire fractional section to Gleason was conclusive as to its non-swamp character. The Department had lost jurisdiction over the matter in 1885 when it attempted to grant lot 5 to the State.

Titles to lands patented by the Government to private parties, which might by any possibility be classified as swamp, would be very insecure were this position of the defendant tenable. *Brown* v. *Hitchcock*, 173 U. S. 473; *Rogers Locomotive Machine Works* v. *American Emigrant Co.*, 164 U. S. 559; *Mich. Land & Lumber Co.* v. *Rust*, 168 U. S. 589.

The court erred in holding invalid the claim of the plaintiff under the statutes of the United States governing the surveys of the public lands, and the statutes relating to homestead entries and patents issued thereon to the land in controversy in this suit situated in lot 5 as shown on the plat of 1874. Act of February 11, 1805, 2 Stat. 313; §§ 2396, 2397, Rev. Stat.; act of April 5, 1832, 4 Stat. 503.

*Mr. Edward L. White* defendant in error in *propria persona:*

Upon the facts the legal proposition is whether the patents to Gleason conveyed the entire north half of this fractional section as shown on the plat of the survey of 1874–1875; or whether it only embraced the area contained in lot 1 of the survey of 1845, as bounded by the lines drawn on the map and the lengths and boundaries of these lines as thereon marked, for which no field notes are shown.

The line of commencing at the southeast corner of this section on the plat of 1845 and running thence N. 2° W., 80.60 chains is not a meander line, according to any authority defining such a line. Lots 1 and 2 of survey of 1845 are bounded on all sides by straight lines. *Turner* v. *Parker,* 14 Oregon, 340; *Railroad Co.* v. *Schurmier,* 7 Wall. 272.

As to the manner of taking distances from one point to another on navigable waters the measurement is by its meanders, and not in a direct line. See *Rayburn* v. *Winant,* 16 Oregon, 318; *Johnson* v. *Pannel,* 2 Wheat. 206.

In all of the cases cited by counsel for plaintiff in error, in which the questions of water boundaries are decided, the field notes are given, showing that the lines were run to the water boundary at some point, as required by statute. No case is cited in which the field notes were not used to show the point at which the line reached the water. Counsel for plaintiff in error admits that the distance given from the northwest corner to the Bay is too short. It is too short because it was never run by any survey made in 1845, of which any field notes are given, but was simply plotted by the draughtsman to show the area of the lot. The rule "That the call for distance must give way to the natural boundary," applies only to cases where the field notes show that the line was actually run to such boundary.

There is strong corroborative evidence that no interior subdivisional survey was made of this township in 1845, and therefore there was no original survey to be obliterated, which

accounts for the absence of any field notes of a subdivisional survey of this township in 1845.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The case was tried by the court without a jury. No special findings of fact having been made, and the proceedings in the trial court having been approved by the Supreme Court of the State, without an opinion, we must affirm the judgment if there be evidence sufficient to sustain it, although there may be other testimony of a contradictory nature. It is not our province to weigh conflicting testimony in a case coming to us as this does.

It is undoubtedly true that the official surveys of the public lands of the United States are controlling. *Stoneroad* v. *Stoneroad,* 158 U. S. 240; *Russell* v. *Maxwell Land Grant Co.,* 158 U. S. 253; *United States* v. *Montana Lumber and Manufacturing Co.,* 196 U. S. 573; *Whitaker* v. *McBride,* 197 U. S. 510. Here we have two conflicting official surveys and plats, and, by mistake of the Land Department, two patents have been issued, which, in a certain aspect of the surveys and plats, also conflict. It is one of those unfortunate mistakes which sometimes occur, and which necessarily throw confusion and doubt upon titles. Since it was discovered the Land Department has wisely refused to extend the confusion by further patents under the survey of 1875.

The patent to Gleason was three years after the last survey, which, in so far as it conflicted with the prior survey, superseded that and became the official record of the Land Department. Notwithstanding this, the patent purports to convey lots 1 and 2 as shown by the survey of 1845. Undoubtedly the mistake arose because the homestead entry, which must have been five years before the patent, was made before the survey of 1875, and at that time the official record was the plat of 1845, which showed only the two lots. Through carelessness,

and not recognizing the change made by the survey of 1875, the patent refers to the survey of 1845, relying upon the description in the homestead entry. The land patented amounted to 164.84 acres. The homestead law allowed one to enter 160 acres, and as the patent covered 4.84 acres more than the amount allowed for a homestead, the patentee paid the Government price for the excess, $6.05. The contract of McKay for the survey of 1845 was a contract to survey the exterior lines of township 53, and while the field notes of the west line of the township are preserved, his notes of the east and subdivision lines are not to be found in the Land Department. The plat, as will be seen, shows an east line running north 2° west, 80.60 chains, a south line 22.61 chains from the west line, and a north line 19.81 chains, making almost a rectangle, and containing the number of acres described in the patent. East of this township appears Biscayne Bay, according to each plat. The plat made in 1875 shows a south line 22.35 chains, very nearly the same as that of the plat of 1845, but the north line is 59.92 chains, making an almost complete quarter of the N. W. sec. 19. The field notes of the survey of 1875 show that the surveyor found on the line between sections 18 and 19, at a distance of 40.35 chains from the west township line, an old quarter section post, and set a new one in place of it. It would seem a not unreasonable conclusion from this that McKay in 1845 in fact surveyed a tract of land east of lots 1 and 2, but that when the plat was made either his field notes had disappeared or were ignored in running the lines of the north half of section 19. It further appears that the survey of 1875 was requested by the patentee, William H. Gleason, who stated that the survey of the entire township was entirely or almost entirely obliterated. It also appears that Gleason, when he received his patent, took title to what was substantially the west half of the northwest quarter and the west half of the southwest quarter of section 19, the east line, as shown by the plat, being almost a straight line, running north and south. It does not seem that he could have

been mistaken as to the land that he was acquiring from the Government, for he must have lived on it five years in order to have perfected his homestead. He could not have been ignorant of the large tract lying east of what was described in the plat of 1845 as "lot 1." The official plat at the time of the patent was the plat of the survey of 1875. He was chargeable as matter of law with notice of that plat. More than that, as the survey was at his instance, it is a reasonable assumption that in fact he knew what the lines of that survey and plat were. Under those circumstances full justice is done if a patent title to lands outside his lines as shown by the plat of 1845, is sustained, for he still is protected in the tract bounded by those lines and amounting to 164.84 acres. To give him twice that amount of land would be enabling him to profit by a mistake of the Government—a mistake of which he was cognizant. Under those circumstances we are of opinion that the judgment of the Supreme Court of Florida must be and it is

                                              *Affirmed.*