[L. A. No. 2827.  Department Two.—December 24, 1912.]

## SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. JACKSON OIL COMPANY et al., Respondents.

PUBLIC LAND—RAILROAD GRANT—INDEMNITY SELECTIONS—RELATION OF PATENT.—The general rule is that patents to a railroad for indemnity lands relate back to the date of selection of the land within the indemnity limits, with the approval of the land department.

ID.—LAND DEPARTMENT—JURISDICTION—FINALITY OF PATENT.—Pending a proceeding before the United States Land Department for the issuance of a patent to land, the secretary of the interior has jurisdiction to review all rulings theretofore made, but after patent has issued and the government has formally declared that it conveyed the land in question, no further departmental interference is legally possible.

Id.—Identity of Land Conveyed—Final Decision of Secretary of Interior—Conflicting Surveys—Mineral Locations.—The final decision of the secretary of the interior determining that a patent issued to the Southern Pacific Railroad Company for indemnity land, conveyed the land in accordance with the official survey in force at the time the patent was issued, and was dependent upon a supplementary indemnity application which antedated the patent, and was not in accordance with a different survey in effect when the original application to select the land was made, is conclusive upon a claimant of land under mineral locations made subsequent to the issuance of the patent.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

William Singer, Jr., and Frank Thunen, for Appellant.

M. B. Harris, E. M. Harris, C. L. Claflin, and Goodfellow, Eells & Orrick, for Respondents.

MELVIN, J.—Plaintiff sued to recover possession and rent for the use of a certain tract of land in Kern County known as lot 4 of section 11, in township 30 south, range 21 east, Mount Diablo base and meridian. Judgment was in favor of defendants, and plaintiff prosecutes this appeal therefrom.

Plaintiff bases its claim for title to and right of possession of said lot 4 upon a patent dated January 25, 1896, from the United States government to plaintiff for a tract of land designated as the northeast quarter of section 11. The land in controversy is within the above-mentioned quarter section according to the official survey made by one Carpenter in 1893, but defendants contend and the court evidently concluded that the land conveyed by plaintiff's patent was the northeast one-fourth of section 11 as designated by an earlier survey (also official) made by one Reed in 1869. Lot 4 is not included within the quarter section as shown by the Reed survey. Defendants claim the right to possession of the land under mining locations. Before this action was commenced defendants had discovered and developed oil on the premises. If the Reed survey controls plaintiff's patent, lot 4 was not conveyed to that corporation. If the Carpenter survey is to

be followed, then the land in question belonged to plaintiff and was not subject to location for mining when defendants took possession thereof.

On February 17, 1892, the Southern Pacific Railroad Company applied, by list No. 48, to be permitted to select certain indemnity lands including the northeast one-fourth of section 11. At that time the Reed survey was the only official admeasurement of that section. Said survey had been approved April 27, 1869. On November 18, 1893, the Carpenter survey was approved. By it the former northeast quarter of section 11 was preserved and marked on the Carpenter map as "S. P. R. R. Co., Lot 41." It was not attached to any section according to the Carpenter map, but subsequently to the issuance of plaintiff's patent a section line was run through said lot 41, thereby placing a part of it in section 11, and the remainder in section 2. On June 24, 1902, plaintiff filed a supplemental indemnity list, No. 48, specifying the lot here in question. On January 14, 1896, indemnity selection list No. 48 was approved by the interior department. On January 25, 1896, patent No. 31 was issued from the government to plaintiff for the northeast quarter of section 11. If that patent operates only as of the date of its issue it includes lot 4 within the terms of its description; if it relates back to the date of the selection of the northeast quarter of section 11, then its description covers not the quarter section in which lot 4 is located, but that which is called on the Carpenter map "S. P. R. R. Co. Lot 41." The general rule is that such patents relate back to the date of selection of the land within the indemnity limits, with the approval of the land department. (*Southern Pacific Co.* v. *Wood,* 124 Cal. 475, [57 Pac. 388] ; 32 Cyc. 960; *Weyerhaeuser* v. *Hoyt,* 219 U. S. 391, [55 L. Ed. 258, 31 Sup. Ct. Rep. 300].) Therefore, respondents contend that the patent was exactly like one which might have been issued December 23, 1891, when the Reed survey alone was in effect, in so far as the actual location of the land was concerned.

The land department has rendered conflicting decisions with reference to this lot. On July 16, 1902, Commissioner Hermann, after citing the decision in *Southern Pacific R. R. Co.* v. *Bruns,* 31 Land Dec. 272, rendered an opinion which is in part as follows:

"Following the ruling of the department in the case cited which involved sec. 1 of this township, I must hold that the patent issued January 25, 1896, to the company for the N. E. 1-4 of sec. 11, covers lots 1, 4 and 9 of sec. 11, as that was the only public land in said quarter section at that date. While said lots 1, 4 and 9 were never selected by the company, yet the patent is unimpaired and the company will be required to specify from the lands lost within the primary limits of the grant a basis for the land so irregulary patented."

This decision was approved by the secretary of the interior. The company subsequently gave formal acceptance to this ruling, and the commissioner declared the case closed. This was in 1903. Plaintiff contends that this decision and its acceptance were binding on all persons, and that no question may now be raised with reference to plaintiff's title. Defendants, on the other hand, insist that the matters decided were merely based upon questions of law, and as plaintiff and nobody else has assented to their correctness, the defendants herein are not bound by the rulings of the land department. They also assert that the Bruns decision has been vacated and recalled and that the department of the interior has adopted the view for which they contend. In *McKittrick Oil Co.* v. *Southern Pacific R. R. Co.,* 37 Land Dec. 244, the department, following *Gleason* v. *White,* 199 U. S. 54, [50 L. Ed. 87, 25 Sup. Ct. Rep. 782], reversed the ruling made in *Southern Pacific R. R. Co.* v. *Bruns,* and on March 17, 1911, the very selection now under discussion was reviewed by the commissioner of the general land-office, who held that the patent of the Southern Pacific Railroad Company dated January 25, 1896, did not convey any title to lots 1, 4, and 9 of section 11. The department of the interior, however, reviewed this ruling, and overruled *McKittrick Oil Co.* v. *Southern Pacific R. R. Co.,* 37 Land Dec. 244, in the following opinion:

"The Southern Pacific Railway Company has appealed from the decision of the commissioner of the general land-office, dated March 17, 1911, wherein, as the result of a contest proceeding instituted by the Jackson Oil Company, it was found that lots 1, 4, and 9, being a part of the N. E. 1-4, sec. 11, T. 30 S., R. 21 E., M. D. M., Visalia land district, California, are oil lands; that said tracts were not embraced

in any previous patent issued to said company; and that its selection therefor, which was held to be still pending, was rejected because of said mineral finding.

"The mineral character of the tracts in question seems to be conceded, but the railroad company earnestly contends that the tracts involved are not public lands, having been included in the patent issued to said company January 25, 1896.

"This township was originally surveyed by one Reed, whose survey was approved April 27, 1869. The township was later surveyed by one H. P. Carpenter, whose survey was approved November 18, 1893, and the plat thereof filed in the local land-office at Visalia, April 6, 1894.

"December 26, 1891, the Southern Pacific Railroad Company applied to select, among other tracts, the N. E. 1-4 of section 11 of this township. The selection was not acted upon until 1896, when patent was made fo it of the N. E. 1-4 of section 11 of said township. The question involved is as to whether such N. E. 1-4 is to be understood according to the survey in effect when the company applied to select this land, or the survey in force at the time the patent was issued. It is well settled that no selection is complete until acted upon by the department. At the time the department acted on this application the Carpenter survey was in force and there was no authority in law for issuing patents to the railroad in other than odd-numbered sections. It necessarily follows that the patent issued in 1896 to the railroad company must be interpreted according to the Carpenter survey. If a mistake was made in issuing the patent—which is not decided— it is too late to correct that mistake. It necessarily follows that lots 1, 4, and 9 did pass to the railroad under the patent of 1896, while no land now in section 2 under the Carpenter survey passed to the railroad.

"This holding is in consonance with the decision of the department of January 23, 1903. Consequently the patent of 1896, issued to the railroad company, as held in said decision of January 23, 1903, conveyed the title to these lots to said company; and since then this department has been without jurisdiction over the lands. Any expression to the contrary, in the case of *McKittrick Oil Co.* v. *Southern Pacific Rail-*

*road Co.* (37 Land Dec. 243), must be regarded as over-ruled.

"The decision appealed from is reversed and the cause is dismissed."

With the foregoing opinion we entirely agree. The United States government by its duly authorized agents declared the title to this lot to be in the plaintiff, and the whole matter finally settled and closed. This was in 1903, and the mining locations which are the bases of the title asserted by defendants were made in 1907 and 1908. This ruling was supported by the plaintiff's patent which in terms related to this very land. In 1903 the patent was ratified by mutual construction given by the parties thereto. While the matter was pending, the secretary of the interior had jurisdiction to review all rulings theretofore made (*Gage* v. *Gunther,* 136 Cal. 345, [89 Am. St. Rep. 141, 68 Pac. 710], but after the patent had issued and the government had formally declared that it conveyed the land in question, no further departmental interference was legally possible. The secretary of the interior might have requested the attorney general, to institute proceedings for the annulment of the patent (*Gage* v. *Gunther,* 136 Cal. 345, [89 Am. St. Rep. 141, 68 Pac. 710]), but that would have been the limit of his authority. He did not pursue such course but on the contrary, after a review of the facts, he declared the transaction between the government and the patentee to be closed. It was for him to determine whether the patent as finally issued was dependent upon the selection originally made or upon the supplement to indemnity list No. 48, which antedated the patent and in which lot 4 was specified by the Southern Pacific Railroad Company. Upon the facts presented he did not, in our opinion, err in his interpretation of the law.

The judgment is reversed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.