[Civ. No. 3356. Second Appellate District, Division One.—October 22, 1920.]

SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. McKITTRICK OIL COMPANY, Respondent.

[1] PUBLIC LANDS—ISSUANCE OF PATENT—DEPARTMENTAL DECISION AS TO TITLE — FINALTY OF — JURISDICTION TO CHANGE.—Where a patent issued to the Southern Pacific Railroad Company covering a designated tract of public land, without reference to either of two plats in which such designation referred to entirely different parcels, and thereafter the United States government, by its duly authorized agents, formally decided and declared that such patent covered the tract of land thus designated according to a given survey, "which was the then accepted plat in use governing the disposal of public lands in this township," and that title to that tract of land was in the Southern Pacific Railroad Company, and there was no appeal from that decision, the matter was then finally settled and closed, not only against the person then contesting the title to that tract of land, but also against the United States government, and no further departmental interference on behalf of a subsequent claimant was legally possible.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank Thunen for Appellant.

Geo. E. Whitaker for Respondent.

CONREY, P. J.—The plaintiff brought this action to quiet its title to certain tracts of land in Kern County, described as lots 1 and 2 and south half of the southeast quarter of section 1, in township 30 south, range 21 east, Mount Diablo base and meridian. Judgment was entered in favor of the defendant, and the plaintiff appeals therefrom.

[1] Plaintiff's claim of title is based upon a patent dated January 25, 1896, from the United States government to plaintiff of a large number of parcels of land, one of which was designated as all of fractional section 1, containing 641.40 acres, in said township 30. The same patent also granted the northeast quarter of section 11, containing 160

acres, and being in the same township. A survey of the lands in that township, approved April 27, 1869, and known as the Reed survey, was the only official survey.of that section until the year 1893. A second survey, known as the Carpenter survey, was approved on November 18, 1893. In some Land Department cases this is called the survey of 1894. By the Carpenter survey the former section 1 was preserved and marked on the Carpenter map as "S. P. R. R. Co. Lot 37." It was not attached to any section, according to the Carpenter map. Immediately south of this lot 37, Carpenter in his survey designated and laid out a new fractional section 1, subdivided into six lots, which were designated therein as lots 1, 2, 3, 4, south half of southwest quarter, and south half of southeast quarter. Three .of these parcels are the subject of the present action.

On February 17, 1892, the Southern Pacific Railroad Company applied, by list No. 48, to be permitted to select certain indemnity lands, including all of section 1. On January 14, 1896, indemnity selection list No. 48 was approved by the Interior Department. On January 25, 1896, the patent issued as hereinabove stated. Respondent contends that the land conveyed by plaintiff's patent was the section 1 as designated by the Reed survey. Appellant, on the other hand, contends that the description in the patent applies solely to the Carpenter survey. There have been conflicting decisions upon the question of interpretation thus presented. The present task resolves itself into the duty to determine which ones of those decisions are controlling authority in this case.

On December 30, 1899, one Carl A. Bruns made application to select, under the provisions of the act of June 4, 1897 (30 Stats. U. S. 36), the several subdivisions constituting section 1 of said township 30. On January 10, 1900, the Southern Pacific Railroad Company applied to make indemnity selection of the south half of the southwest quarter and the south half of the southeast quarter of said section. Both of these applications were subsequent to the approval of the Carpenter survey, and the descriptions in the applications tally exactly with the subdivisions of section 1 as shown in that survey. By decision of date November 22, 1900, the commissioner of the general land office rejected both of these applications upon the ground that the patent

to the railroad company issued on January 25, 1896, included the land embraced in said applications. On December 15, 1900, the commissioner recalled said decision and permitted the selection by Bruns to stand, holding in effect that the railroad patent of January 25, 1896, did not embrace the land covered by said applications, because it was land added to section 1 by the Carpenter survey. From the decision of December 15, 1900, the railroad company appealed to the Secretary of the Interior. By decision of date March 26, 1902, the secretary reaffirmed the commissioner's decision of November 22, 1900. Referring to the fact that the patent conveyed a title to "all of fractional section 1" within said township, the secretary held that this language was clear and unambiguous and that the land then in question was the only land meeting the description quoted according to the plat of the Carpenter survey, "which was the then accepted plat in use governing the disposal of public lands in this township." The foregoing decision of the secretary seems to have ended the controversy so far as Bruns was concerned and so far as the United States government was concerned, and from that time has been relied upon by the railroad company, which prior thereto had been contending that the land conveyed to it in the patent of fractional section 1 was the land designated as lot 37 in the Carpenter survey and as fractional section 1 of the Reed survey.

On the twenty-eighth day of December, 1904, the Mc-Kittrick Oil Company presented in the Visalia land district an application for patent for what is called the California Oil Company No. 28 Placer Mining Claim, embracing within its limits the same parcels of land now claimed by the plaintiff in this action. This application was made under a mining location which originated on September 19, 1899, and which on December 2, 1899, was conveyed by the locators to the claimant, McKittrick Oil Company. This application was rejected by the local land officers on the ground that the land asked for had been patented to the Southern Pacific Railroad Company and was not, therefore, public land of the United States subject to disposition under the mining laws. On appeal by the mineral claimant, the commissioner of the general land office, by decision of April 12, 1905, affirmed the action of the local officers, citing the case of

*Southern Pacific R. R. Co.* v. *Bruns,* 31 Land Dec. 272, which is the decision of March 26, 1902. The mineral claimant having further appealed, the secretary made his decision thereon of date November 13, 1908. (*McKittrick Oil Co.* v. *Southern Pac. R. R. Co.,* 37 Land Dec. 244.) In this decision the department arrived at the conclusion that the decision of March 26, 1902, was erroneous in its "assumption that a patent must in all cases be read in connection with the plat of survey on file at the date of the issuance of the patent, where prior thereto two or more conflicting or inconsistent surveys had been made of the township embracing the tract named in the patent." After stating the decision made in *Gleason* v. *White,* 199 U. S. 54, [50 L. Ed. 87, 25 Sup. Ct. Rep. 782, see, also, Rose's U. S. Notes], (relating to a patent for lands in Florida), which was relied upon as authority for the new attitude of the department concerning the interpretation of the patent, the decision concludes: "The department is of opinion, therefore, that the assumption upon which its previous decision with respect to the land here in question was based was erroneous, and that the case should have been, and should now be, in determining the subject matter of the patent, considered and decided with reference to the record involved in the issuance of the patent." The department thereupon held that, in view of the circumstances stated by it, "the tract represented as fractional section 1 of township 30 south, range 21 east, M. D. M., on the plat of the survey of 1869, and not the fractional section 1 of that township as returned by the survey of 1894, is the tract that passed to the Southern Pacific Railroad Company by its patent of January 25, 1896. The departmental decision in the case of *Southern Pacific R. R. Co.* v. *Bruns, supra,* is therefore recalled and vacated."

Thereafter the mineral claimant, the defendant in this action, was allowed to continue its proceeding to perfect its claim to this land as public land of the United States, with the result that on April 3, 1916, there was issued to the defendant the patent under which it now claims title to the land in controversy.

Appellant relies upon *Southern Pacific R. R. Co.* v. *Jackson Oil Co.,* 164 Cal. 392, [129 Pac. 276], as authority upon which this case should be decided. In that action the land in controversy was described as lot 4 of section 11 of said

township 30.   The plaintiff there based its claim of title upon the patent of January 25, 1896, which, as we have shown, included a tract of land designated as the northeast quarter of section 11, of which lot 4 was a part, according to the Carpenter survey.   We here refer to that decision and its statement of the case there presented.   The supreme court in its opinion copied in full a decision rendered October 6, 1911 (40 Land Dec. 528), on appeal from a decision of the commissioner of the general land office in the case there entitled *Jackson Oil Co.* v. *Southern Pacific Ry. Co.* In that opinion the department overruled its former decision of date November 13, 1908, in *McKittrick Oil Co.* v. *Southern Pacific R. R. Co.*, and again held, as had been held in the Bruns case, that the patent of 1896 to the railroad company must be interpreted according to the Carpenter survey. Not only so, but the decision further emphasized the fact that the department itself in 1903 had held, in a contest which presented the same question, that the patent of 1896, "conveyed the title to these lots to said company; and since then this department has been without jurisdiction over the lands.   Any expression to the contrary, in the case of *McKittrick Oil Co.* v. *Southern Pacific R. R. Co.*, 37 Land Dec. 243, must be regarded as overruled."   Thereupon the supreme court said: "With the foregoing opinion we entirely agree.   The United States government by its duly authorized agents declared the title to this lot to be in the plaintiff, and the whole matter finally settled and closed. . . . While the matter was pending, the Secretary of the Interior had jurisdiction to review all rulings theretofore made (*Gage* v. *Gunther*, 136 Cal. 345, [89 Am. St. Rep. 141, 68 Pac. 710]), but after the patent had issued and the government had formally declared that it conveyed the land in question, no further departmental interference was legally possible."

After the department decision in *Jackson Oil Co.* v. *Southern Pacific R. R. Co.*, of date October 6, 1911, the matter of the McKittrick Oil Company and its claim for a patent was again considered by the department which, on August 9, 1913, reaffirmed its former decision in the case of *McKittrick Oil Co.* v. *Southern Pacific Co.*, and declined to follow the doctrine of the Jackson Oil Company case.

By the decision which, on November 13, 1908, the Secretary of the Interior made in favor of the McKittrick Oil

Company, and by the subsequent proceedings in the same case, the department assumed that it had jurisdiction over this land as government land. · On that assumption the department called before it the Southern Pacific Railroad Company, and undertook to "recall and vacate" its decision of March 26, 1902, wherein the government had acknowledged that this was no longer public land and had solemnly declared that it was the property of the railroad company. If in these later proceedings the Land Department did have jurisdiction to act upon the subject matter constituting appellant's rights under its patent, then the judgment herein should be affirmed, since the state courts have no power to review the decisions of the department in the exercise of its jurisdiction over the disposition of public lands. But if in such later proceedings the department was without jurisdictional power and authority to so act, then the judgment of the superior court herein should be reversed. We think that the decision in *Southern Pac. R. R. Co.* v. *Jackson Oil Co.,* 164 Cal. 392, [129 Pac. 276], is authority to the effect that the department was without power to repudiate the finality of its former decisions. The United States government, by its duly authorized agents, on March 26, 1902, declared that the title to this land then was in appellant. Certainly the matter was then finally settled and closed in favor of appellant, not only against Bruns, but also as against the United States. The effect of that decision was that the title of appellant *had become vested,* to the very land in question here, from and after the twenty-fifth day of January, 1896. Thereafter, there being no further appeal, that proceeding became final and complete. It is appropriate to say here, as was said in the Jackson case, "no further departmental interference was legally possible." It results that the respondent's claim of title under its patent must yield to the prior title of appellant.

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 20, 1920.

All the Justices concurred.