[Civ. No. 5933. First Appellate District, Division Two.—October 4, 1927.]

LOUISE L. LEUTHOLTZ, Respondent, v. O. E. HOTCHKISS, Appellant.

Frank Hall and Charles S. Wheeler, Jr., for Appellant.

C. E. Arnold, George B. Bush, Philip C. Farman and Roland Rich Woolley for Respondent.

WARNE, J., *pro tem.*—This is an appeal by the defendant from a judgment in favor of plaintiff adjudging plaintiff the owner of the exclusive right to the possession of certain lands in Kern County to prospect for and remove oil and gas therefrom and to the possession of said lands, and decreeing that defendant had not any right, title, or interest in said land and enjoining defendant from asserting any claim of ownership in, or any right, title, or interest in or to, said land adverse to plaintiff.

Defendant answered denying the claim of plaintiff and asked for affirmative and injunctive relief.

The legal title of the land is vested in the United States.

Plaintiff's claim is predicated upon an oil and gas prospecting permit issued by the Secretary of the Interior on May 23, 1921, under the provisions of an act of Congress, approved February 25, 1920.

Defendant claims an equitable title to the land under a lieu land selection made therefor by the state of California on February 17, 1908; a purchase thereof by one Clarrage on March 12, 1921, and a grant deed from Clarrage on January 9, 1923. This deed was recorded in Kern County on June 11, 1924.

On February 17, 1908, when the land in question was selected by the state in lieu of certain school land within the boundaries of the government reservation, it was vacant and unappropriated public land and not known to contain any valuable minerals or pools of oil or gas. This selection was rejected by the local land office because the base lands tendered by the state in exchange were within a temporary forest reserve withdrawal. An appeal was taken to the commissioner of the general land office resulting in a reversal of the order on April 20, 1909, with the direction that it be allowed ''if no other objection appears than the defect for which you reject the same.''

No further action was taken by either the local or general land office until November 20, 1909, when the local land office returned the selection to the general land office, stating that it was suspended on October 12, 1909, on account of the lands selected being classified as oil lands. The state was allowed to furnish, and did furnish, an *ex parte* nonmineral affidavit, and an appeal was taken.

On July 17, 1916, the commissioner of the general land office ordered the local land office to notify the state and its transferee that they would be allowed thirty days to accept a patent to the land, reserving to the United States the oil and gas therein, or to apply for a hearing to prove the nonmineral character of the land, and that in the event of a failure to take action, or appeal from the decision to the Secretary of the Interior, within the specified time the case would be reported for appropriate action. Notice was accordingly served upon the state and its transferee on July

17, 1916. No action was taken in response by either, and the selection was ordered canceled on July 20, 1927. Clarrage made application to the state to purchase this land as land not suitable for cultivation, in January, 1908. This application was subsequently approved and the state issued a certificate of purchase for the land in 1912. The certificate contained the following as a part thereof: "The title to the within lands at date hereof is in the United States. State may not receive title, in which event this certificate is void. Also applicant's failure to comply with the rules of the United States Land Office will defeat applicant's right hereunder." Plaintiff entered upon the lands under her prospecting permit and has drilled a well to the depth of about 2,600 feet at an expense of $70,000. Plaintiff was aware of defendant's alleged claim to the land prior to the time of making any part of said expenditure, but it does not appear that she knew of the claim at the time her permit was issued. The mineral character of the land as known at the date of selection has not been established. Neither defendant nor his grantor have ever occupied the land.

It seems to be that at the time of the adverse decision of the commissioner of the general land office, the Department of the Interior took the erroneous position that it could deny an applicant approval of his lieu land selection if it became known that the land in question was mineral in character at any time after the original selection was made, although it was not known to be mineral when the applicant selected it. In March, 1921, the supreme court of the United States disapproved this rule (*Payne* v. *New Mexico,* 255 U. S. 367 [65 L. Ed. 680, 41 Sup. Ct. Rep. 333], and *Wyoming* v. *United States,* 255 U. S. 489 [65 L. Ed. 742, 41 Sup. Ct. Rep. 393]), and laid down the rule that the mineral or nonmineral character of the land, as known at the date of the selection, is the only fact with reference to the character of the land open for determination by the department in passing on the priority or validity of the selection, and further held that a selection made in compliance with law and the regulations of the Land Department took effect and vested an equitable interest in the state at the time it was filed in the land office.

The trial court concluded that the state and its transferee had accepted the construction of the law as an-

nounced by the commissioner of the general land office by failing to appeal from his decision to the Secretary of the Interior and thereby abandoned his claim; "also that defendant is barred from relief by the court by his long delay, including that of his predecessor in interest, in asserting an interest in the land."

Appellant attacks these conclusions. He claims that an equitable interest having once vested in the state upon making the lieu land selection, it was not defeated by the erroneous ruling of the land department on a question of law. That it being a mistake of law the secretary of the Department of the Interior should, and can, correct it at any time on application. That it is his function and duty to correct such mistake and until the secretary has determined the question of whether the land was known to be mineral or nonmineral at the time of selection the appellant's equitable title cannot be questioned. In support of the authority or duty of the secretary to correct a mistake of law appellant cites the case of *Gage* v. *Gunther,* 136 Cal. 338 [89 Am. St. Rep. 141, 68 Pac. 710]. This might be urged were it not for the intervening rights of the respondent, and it could be said without question that appellant and his predecessors in interest had not by their acts and delay led one to the conclusion that they had abandoned whatever right they may have had to the land. Appellant did not avail himself of his right of appeal to the Secretary of the Interior from the commissioner's ruling. The state's selection was canceled and both the state and Clarrage acquiesced in such cancellation. True, the right once having vested it could not be lost merely by the subsequent discovery of the land's being mineral in character, but the right could be and was, we think, lost by permitting the government's cancellation of the selection duly made according to its rules and regulation to stand for the time it did. After the cancellation the prospecting permit was duly issued to respondent and at that time it does not appear that respondent was aware of any outstanding claim to the land. The land was open for prospecting for oil so far as the government's records showed. Neither appellant nor his grantor have ever occupied the land. Appellant took no steps to establish any equitable interest he may have had in the land until suit was brought by respondent to quiet title to her prospecting right and this notwithstand-

ing the fact that the supreme court of the United States had decided the Payne case, *supra*, and Wyoming case, *supra*, some two years before. Such delay as is shown here must, we think, be treated as an abandonment of his claim. The appellant slept on his rights. As was said by the court below:

"A party defeated by the decision of the land department may not wait many years after an adverse decision there, especially of an intermediate department, and when the Supreme Court shall have announced a new construction of the law in an entirely different action successfully reassert his claim under such circumstances as are here disclosed. . . .

"The government through its cancellation of the state selection reasserted its title to the land and resumed control of it for a much longer period than the statute of limitations provides and which may be relied upon in adverse proceedings to quiet title to real property."

For the reasons stated the judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.