[Civ. No. 1347.   First Appellate District.—July 23, 1914.]

## J. H. JORDAN, Respondent, v. W. S. KINGSBURY, as Surveyor-General and Register of the State Land Office, Appellant.

STATE LAND—RESURVEY OF THIRTY-SIXTH SECTION SO AS TO CHANGE ORIGINAL BOUNDARIES.—Where on an official resurvey of the thirty-sixth section of a township the boundaries are changed so as to include land not embraced by the lines of the section as originally surveyed, the land thus included becomes a part of the school lands of the state and open to purchase under its laws.

ID.—BOUNDARIES BETWEEN STATE AND FEDERAL LANDS—CONFUSION IN AS GROUND FOR REFUSAL OF MANDAMUS.—A writ of mandate to compel the surveyor-general to approve an application to purchase such land will not be denied on the ground that the granting of the writ will create confusion between the state and federal governments as to the boundaries of their respective lands.

ID.—APPLICATION TO PURCHASE—ACTS OF SURVEYOR-GENERAL MINISTERIAL—MANDAMUS.—The power of the surveyor-general, upon an application to purchase state lands, is neither judicial nor unlimited, under section 3498 of the Political Code, but merely ministerial, and he is subject to the compulsion of a writ of mandate.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Malcolm C. Glenn, Deputy Attorney-General, for Appellant.

B. M. Aikins, for Respondent.

RICHARDS, J.—This is a proceeding wherein the plaintiff sought and obtained in the trial court a peremptory writ of mandate, requiring the defendant, as surveyor general of California and register of the state land-office to approve the plaintiff's application to purchase from the state those certain lands described in his petition. From a judgment to that effect the surveyor general appeals.

The facts of the case are practically undisputed and are quite fully and clearly set forth in the brief of appellant. In the year 1869, an official survey was made by authority of the United States government of those sixteenth and thirty-sixth sections of the public lands which had been granted by the government to the state of California for school purposes, under the act of Congress of March 3, 1853. [10 Stats. 244, c. 145]. Between the year 1869 and the year 1893, the state of California had sold and issued patents for all of the lands embraced within the said section 36, in which the lands sought to be purchased by plaintiff are now claimed to be. In the year 1893, the United States government ordered another official survey to be made of the public lands within that region. By this later, and probably more accurate, survey, the boundary lines of said section 36 were shifted southward and also slightly eastward, so as to embrace a considerable tract of land on the southward side and a narrow strip on the eastward side not theretofore included within the older section lines. The tract of land now sought to be purchased by the plaintiff lies within these newer boundaries but outside of the lands originally surveyed. The application of the plaintiff to purchase these lands was disapproved and denied by the surveyor general, upon the chief ground, as expressed in his decision disapproving the same, that the lands sought to be purchased belonged to the United States and not to the state. In opposing the application for the writ of mandate, the defendant urged two additional reasons why it should be denied. These were: 1. That the decision of the surveyor general is final upon an application to purchase state lands, and hence is not reviewable by the courts; and 2. That the granting of the writ of mandate would lead to great confusion between the state and federal governments as to the boundaries of state and federal lands. It is conceded by the surveyor general that the application of the plaintiff to purchase

these lands was otherwise regular in form and substance, and that he was and is a qualified person to purchase the same.

It will thus be seen that the first question for determination is the question as to whether, for the purposes of this proceeding, these lands are to be regarded as state lands, lying within the official boundaries of the said thirty-sixth section, and therefore open to purchase by the plaintiff. We think this question must be answered in the affirmative, upon the authority of the cases of *Cragin* v. *Powell,* 128 U. S. 691, 698, [32 L. Ed. 566, 9 Sup. Ct. Rep. 203]; *Hardin* v. *Jordan,* 140 U. S. 371, [35 L. Ed. 428, 11 Sup. Ct. Rep. 808, 838]; *Knight* v. *United States Land Association,* 142 U. S. 161, [35 L. Ed. 974, 12 Sup. Ct. Rep. 258]; *Gleason* v. *White,* 199 U. S. 54, 60, [50 L. Ed. 87, 25 Sup. Ct. Rep. 782]. If, therefore, under these authorities the effect of the second official survey of these lands was to include them within the scope of the act of Congress of March 3, 1853, and transfer them to the state as a part of its school lands, it follows that the action and decision of the surveyor general in disapproving the application of the plaintiff to purchase these lands was erroneous. The surveyor general, however, contends that under the authority invested in him by section 3498 of the Political Code, his decision in the matter was final, and hence not the subject of review by the courts upon this form of writ. The section of the Political Code upon which he bases this contention reads as follows:

"If it shall appear to the surveyor general that the application is made in good faith, and that all of the facts stated in the application are true, and that the land applied for is subject to sale, he shall approve the application, otherwise he shall disapprove the same." (Pol. Code, sec. 3498.)

The simple reading of this section shows that the power of the surveyor general is neither as judicial nor as unlimited as he claims it to be. The three conditions upon which the section expressly states he shall act in his approval or disapproval of the application were all met by the plaintiff; his application was admittedly made in good faith; and all the facts stated therein were true; and, as we have seen, the lands applied for were, for the purposes of said application at least, lands of the state, under their last official survey. These things being true, the section of the code in question expressly says that the surveyor general "shall approve the applica-

tion." It is quite clear that this language leaves that official no discretion in the premises, and renders his act merely a ministerial one, and as such subject to the compulsions of a writ of mandate. The case of *Middleton* v. *Low,* 30 Cal. 596, is in point upon this question, and the industry of counsel for appellant has not produced any later case overruling that early decision.

The appellant's final contention that the writ of mandate ought not to issue because of its effect in creating confusion between the state and federal authorities regarding the boundaries of their respective lands is without merit. The clear right of a citizen of the state to acquire public lands open to purchase, in the manner provided by law, must be enforceable by an appropriate proceeding, regardless of such consequences as appellant forecasts. Even if his fears are well grounded, the law has doubtless provided proper remedies for such confusion as might arise without the need of denying this plaintiff the present right to which he is clearly entitled.

The judgment and order denying defendant's motion for a new trial are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.