STATE OF WYOMING and the Richfield Oil Corporation, a corporation, Appellants,

v.

UNITED STATES of America, Appellee.

No. 6869.

United States Court of Appeals Tenth Circuit.

Oct. 12, 1962.

Rehearing Denied Nov. 14, 1962.

568

William D. Foote and M. F. Schade, Los Angeles, Cal. (W. M. Haight, Deputy Atty.Gen., State of Wyoming, and Frank M. Gallivan, Cheyenne, Wyo., were on the brief), for appellants.

S. Billingsley Hill, Atty., Dept. of Justice (Ramsey Clark, Asst. Atty. Gen., Dept. of Justice, Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., Roger P. Marquis and Margaret S. Willick, Attys., Dept. of Justice, were on the brief), for the United States.

Before PHILLIPS, PICKETT and HILL, Circuit Judges.

PHILLIPS, Circuit Judge.

The United States brought this action against the State of Wyoming [1] and Richfield Oil Corporation,[2] seeking a declaratory judgment, under 28 U.S.C.A. § 2201, establishing its title to certain lands in the State of Wyoming, as against the adverse claims of title made by the State of Wyoming, and by Richfield Oil Corporation as the lessee under oil and gas leases on a portion of such lands. From a judgment in favor of the United States, the State of Wyoming and Richfield have appealed.

Section 4 of the Act providing for the admission of the State of Wyoming into the Union, 26 Stat. 222, in part reads:

"Sections numbered sixteen and thirty-six in every township of said proposed State, and where such sections, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said State for the support of common schools, such indemnity lands to be selected within said State in such manner as the legislature may provide, with the approval of the Secretary of the Interior:  *  *  *."

Section 12 of such Act in part reads:

"The State of Wyoming shall not be entitled to any further or other grants of land for any purpose than as expressly provided in this act;.  *  *  *."

Section 14 of such Act in part reads:

" *  *  *  And there shall be deducted from the number of acres of land donated by this act for specific objects to said State the number of acres heretofore donated by Congress to said Territory for similar objects."

Article 18, § 1 of the Wyoming Constitution, Wyoming Statutes, 1957, Vol. 1, p. 165, in part reads:

"The state of Wyoming hereby agrees to accept the grants of lands heretofore made, or that may hereafter be made by the United States to the state, for educational purposes,  *  *  *  with the conditions and limitations that may be imposed by the act or acts of congress, making such grants  *  *  *."

Article 18, § 4 of the Wyoming Constitution, supra, in part reads:

"The legislature shall  *  *  *  provide by law for the location and selection of all lands that have been or may hereafter be granted by congress to the state,  *  *  *."

Section 2 of the Act of May 18, 1796, (The Public Lands Survey Act) 1 Stat. 464, 466, as carried forward in 43 U.S.C.A. § 751, establishing the mode of sur-

1. Hereinafter sometimes referred to as the State.

2. Hereinafter called Richfield.

-veying public lands, provides for the division of the public lands by north and south lines, running according to the true meridian, and by other lines crossing them at right angles, so as to form townships of six miles square; for the division of each township into thirty-six sections, each containing as nearly as may be, six hundred and forty acres; for the progressive numbering of such sections from one through thirty-six; and for the marking of the corners of each section. The public lands of the United States in the Territory of Wyoming were surveyed under the provisions of the Public Lands Survey Act. Such surveys were approved and accepted in 1883 and 1884. Thereafter, it was discovered that many of the surveys were either inaccurate or erroneous and that many of the monuments were obliterated. Because of those facts and the effect thereof upon titles to lands in the State of Wyoming, the State, acting through its officials, private claimants, and officials of the United States,[3] requested Congress to provide for resurveys covering large areas in the State, so that the State, private and Federal lands could be accurately located.[4] Congress responded to such requests in 1903, 1905 and 1908 by enacting legislation which directed resurveys of areas of the State in excess of 12,000,-000 acres. The Resurvey Act of January 10, 1903, 32 Stat. 767, provides:

"That the Secretary of the Interior be, and he is hereby, authorized and directed to cause to be made a resurvey of the following townships in the State of Wyoming: [here follows a description of the townships to be resurveyed]. * * * *Provided*, That nothing herein contained shall be so construed as to impair the present bona fide rights or claim of any actual occupant of any of said lands so occupied to the amount of

land to which, under the law, he is entitled."

The Resurvey Act of March 3, 1905, 33 Stat. 992, was substantially the same as the 1903 Act, except it described different townships. The Resurvey Act of May 29, 1908, 35 Stat. 465, was substantially the same as the two prior Acts, except it described different townships.

The resurveys under the 1903 Act were commenced shortly after that Act became effective and continued under it and the two latter Acts to and including 1921.

(When hereinafter we use the phrase "original school section(s)" we mean the school section(s) as located by the original survey thereof and when hereinafter we use the phrase "resurveyed school section(s)" we mean the school section(s) as located by the resurvey thereof.)

We disagree with the contention of counsel for appellants that we should consider only that part of the evidence which is specifically applicable to the 9 sections remaining in controversy in this action. The resurveys of the townships in which such sections were located were not isolated surveys, separate and apart from the resurveys of the other townships, made under the same or like Congressional authority and for the same reasons and purposes. On the contrary, the resurveys of such townships were a part of an overall plan to correct errors in earlier surveys of many townships. Hence, the conduct of the State and of the United States, with respect to the resurvey of other school sections, was pertinent to show the relative course of action of each in the carrying out of such overall plan and the reliance of the United States on such State conduct.

The officials of the State, throughout the period of the resurveys, actively cooperated and assisted in the making of such resurveys, acting on the premise

3. The United States Surveyor-General for Wyoming; the Commissioner of the General Land Office, Department of the Interior; the Director of the United States Geological Survey; and the Secretary of the Interior.

4. H.R.Report No. 2678, 57th Cong., 1st Session, June 25, 1902; S.Report No. 4342, 58th Cong., 3rd Session, Feb. 23, 1905; H.R.Report No. 1291, 60th Cong., 1st Session, March 23, 1908; 42 C.R., 60th Cong., 1st Session, pp. 7091, 7092.

that Congress intended that either the original school sections or the resurveyed school sections, but not both, should be segregated and designated as school sections granted to the State. On March 17, 1904, Mr. Gilcrest, State Land Inspector and member of the State Board of Land Commissioners, advised the United States Surveyor General that in the making of the resurveys, the State was entitled to have Sections 16 and 36 segregated as originally surveyed. Early in 1904, the State authorities were advised by the Surveyor General as to the desirability of having a representative on the ground to point out the original school sections, so that they could be segregated. By the Act of February 15, 1905, § 36–35, Wyoming Statutes, 1957, it was provided that:

"The commissioner of public lands shall select and locate all lands which are now or may be hereafter granted to the State of Wyoming by the United States for any purpose whatever."

On May 18, 1906, the Governor convened a special meeting of the State Board of School Land Commissioners, of which he was President, and the State Treasurer and Superintendent of Public Instruction were members. The minutes of that meeting recite the following:

"The question of the resurvey of lands in Wyoming being considered it was moved and duly carried that the officers of the Board be authorized to waive the right of the State of Wyoming to sections 16 and 36, or lands selected in lieu thereof, and accept similar numbered tracts, as resurveyed, or lieu land when upon resurvey said tracts are in conflict with private land claims, when such action is not apparently to the serious disadvantage of the State and that the officers of the Board be au-

thorized to execute such papers as may be required by the United States to carry out this plan."

Five days thereafter, the State Land Board adopted a motion stating that it waived its right to original school sections in 12 townships and "agrees to accept in lieu thereof said numbered sections in said numbered townships * * * as resurveyed" and, thereafter, the successive State Commissioners of Public Lands (when it was in the State's interest to do so) consistently filed written waivers of the State's right to have the original school sections segregated and accepted in lieu thereof, as its school land grant, resurveyed school sections.

There were instances where the State officials waived the surveying out by metes and bounds of original school sections and agreed to accept in lieu thereof similarly numbered resurveyed school sections, and in those instances, in accordance with instructions from the Commissioner of the General Land Office, the lines of the original survey in such townships were not rerun.

The record discloses no instance where the State, under the Resolution of May 18, 1906, elected to accept resurveyed school sections in lieu of original school sections, that the State did not execute a waiver of its rights to the latter, and the record discloses many instances where upon such an election by the State it executed such a waiver.

When it was in the State's interest to retain original school sections, they were segregated and assigned a lot or tract number, but in those instances, except in the case referred to in Note 5, infra, a waiver of the resurveyed school sections was not deemed necessary, because it was presumed that no title thereto had passed, since the State retained its title to the original school sections.[5]

---

5. In the entire area of 12,000,000 acres resurveyed, the record disclosed only one instance where it was noted on the records of the United States Land Office that both the area embraced in the original survey, designated as Lot 41, and the

land embraced in the resurvey thereof, designated as Section 16, belonged to the State. However, that error was discovered and brought to the attention of the Commissioner of Public Lands of the State of Wyoming on April 2, 1924, with

The State Commissioner very carefully weighed whether the State should retain in satisfaction of its grant an original school section, or elect to take a resurveyed school section. At no time did he assert a right to both.

Continuously, from the commencement of the resurveys until May 22, 1957, the State, acting through its duly authorized public officials, by the Resolution of May 18, 1906, by the execution of waivers of its claim to original school sections, by the selection of resurveyed school sections in lieu of original school sections, by elections to retain original school sections, and by the official opinion of its Attorney General, dated August 2, 1956, took the position that the State did not have title both to the lands in original school sections and to the additional lands in resurveyed school sections outside of the boundaries of the former.

Thereafter, on May 22, 1957, the Attorney General of the State issued an official opinion and held that the State had title to all of the lands in such original school sections and also in the resurveyed school sections. Under such opinion, the State claimed additional school lands, which, according to an estimate made by the Attorney General of the State, May 6, 1957, amounted to between 60,000 and 70,000 acres, and the oil and gas leases referred to above were issued to Richfield. Richfield agreed to undertake to obtain a final judicial determination with respect to the claims of the State and to defray the expense thereof.

Continuously, from the time such resurveys were commenced, up to the date of the trial of the instant case in the lower court, the United States has treated as public lands the areas embraced in original school sections, where the State elected to execute waivers of its claim to such lands and selected in lieu thereof lands embraced in resurveyed school sections, and as public lands the lands embraced in resurveyed school sections, outside of the boundary lines of original school sections, where the State made no such waivers. During all that period of time, the United States has recognized homestead entries, and has issued public land patents and public land leases of portions of the land which it so treated as public lands.

On September 18, 1959, the United States instituted this action, seeking an adjudication with respect to the title to the areas embraced in the oil and gas leases from the State to Richfield and to land in several other sections selected by the United States as test sections. The action, as commenced, involved 19 sections. Ten were eliminated by agreement of the parties. We shall now turn to the pertinent facts with respect to the 9 remaining sections involved in the action.

Copies of the original resurvey plats of the townships in which the sections involved in this lawsuit are located were introduced in evidence.

The original surveys of the townships in which the sections involved in this action were located were inaccurate or erroneous and many of the monuments were obliterated. However, the boundary lines of the original school sections were identifiable and their original location was established and they were segregated according to the best evidence available.

Where the State elected to retain the land within an original school section, such land was designated on the official plat of the resurvey as a school section; and where the State elected to take the land embraced in a resurveyed school section as lieu land, only such lieu land was designated on such official plat as a school section. The official plats also identified lands that had been patented or otherwise disposed of by the United States. Thus, such official plats indicated

the request that the State advise which of the two tracts it wished to retain in satisfaction of the school land grant of Section 16. On April 4, 1924, the Commissioner of Public Lands of the State of Wyoming, by letter addressed to the United States Surveyor General for Wyoming, advised that the State elected to accept Lot 41, being the land embraced in such section, as located by the original survey, in satisfaction of the grant of Section 16.

by implication that the remaining lands were public lands. Moreover, each plat showed the total acreage in each township and broke it down into public lands, segregated lands and patented lands. In every instance, the acreage of public lands included the areas claimed by the State in this action.

The original survey of Section 16, T. 19 N., R. 103 W., Sixth P.M., Wyoming, was approved March 13, 1884. It was resurveyed under authority of the Resurvey Act of 1903. The official plat of such resurvey was approved August 8, 1907, and the survey was accepted November 13, 1907. The following diagram of a portion of such T. 49 N., R. 103 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

Legend:

Solid lines on diagram show Section 16, as located and segregated by the available evidence of the original survey and redesignated as Lot 42 on such official plat.

Broken lines show such Section 16, as resurveyed.

Area designated as Lot 43 is land for which a patent was issued by the United States to a third party, dated March 3, 1906.

Areas designated as Lots 1, 2, 3, 4, 5, 6 and 7 are additional lands claimed by State of Wyoming by virtue of resurvey and embraced in lease from State to Richfield and also embraced in oil and gas lease from United States to a third party, dated September 1, 1954.

In addition to Lots 1 to 7, inclusive, the State of Wyoming also claims Lot 42, which lots bears the inscription "School Section" on the official plat.

There is a complete absence in the record of any showing that either the State Board of School Land Commissioners or its officers waived its claim to such Section 16, as originally surveyed, and selected in lieu thereof Lots 1 to 7, inclusive, and the remainder of Section 16, as resurveyed, pursuant to the Resolution of such Board of May 18, 1906, or otherwise.

Likewise, as to the 7 sections next considered, the inaction of the State is analogous. With respect to such sections, there is no showing in the record that either the State Board of Land Commis-

sioners or its officers waived its claim to any of such original school sections and selected in lieu thereof the land in re-surveyed school sections lying outside of the former and the remainder of such re-surveyed school sections, pursuant to such Resolution of May 18, 1906, or otherwise.

The original survey of Section 36, T. 50 N., R. 90 W., Sixth P.M., Wyoming, was approved December 22, 1883. It was resurveyed under authority of the Re-survey Act of 1908. The official plat of such resurvey was approved August 10, 1914, and the resurvey was accepted October 21, 1914. The following diagram of a portion of such T. 50 N., R. 90 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

**Legend:**

Solid lines on diagram show Section 36, as located and segregated by the available evidence of the original survey and redesignated as Tract 39 in accordance with the instructions for such resurvey.

Broken lines show such Section 36, as resurveyed.

Area designated as Tract 37 is land for which a patent was issued by the United States to a third party, dated February 8, 1892, and area designated as Tract 38 is land for which a patent was issued by the United States to a third party, dated March 5, 1906.

Areas designated as Lots 1, 2, 3 and 4 are additional lands claimed by the State by virtue of resurvey. A patent was issued on such lots to third parties by the United States, dated November 28, 1952, with minerals reserved to the United States.

In addition to Lots 1 to 4, inclusive, the State also claims Tract 39, which tract bears the inscription "School Section" on the official plat.

The original survey of Section 36, T. 51 N., R. 90 W., Sixth P.M., Wyoming, was approved December 22, 1883. It was resurveyed under authority of the Resurvey Act of 1908. The official plat of such resurvey was approved August 10, 1914, and accepted October 21, 1914. The following diagram of a portion of such T. 51 N., R. 90 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

Legend:

Solid lines on diagram show Section 36, as located and segregated by the available evidence of the original survey and redesignated as Tract 53 in accordance with the instructions for such resurvey.

Broken lines show such Section 36, as resurveyed.

Areas designated as Tracts 52A and 52D are not in dispute here, but resurvey plat indicates that a Homestead Entry was made on such tracts.

Areas designated as Lots 1, 2, 3, 4 and 5 are additional lands claimed by the State by virtue of resurvey.

In addition to Lots 1 to 5 inclusive, the State also claims Tract 53, which tract bears the inscription "School Section" on the official plat.

The original survey of Section 36, T. 52 N., R. 90 W., Sixth P.M., Wyoming, was approved December 22, 1883. It was resurveyed under authority of the Resurvey Act of 1908. The official plat of such resurvey was approved August 10, 1914, and accepted October 21, 1914. The following diagram of a portion of such T. 52 N., R. 90 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

Legend:

Solid lines on diagram show Section 36, as located and segregated by the available evidence of the original survey and redesignated as Tract 46 in accordance with the instructions for such resurvey.

Broken lines show such Section 36, as resurveyed.

The S ½ S ½ of such Section 36 is not in dispute here.

Areas designated as Lots 1, 2, 3, 4, 5 and 6 are additional lands claimed by the State by virtue of resurvey. A patent was issued by the United States to a third party on Lot 3 on November 16, 1938, with minerals reserved to the United States.

In addition to Lots 1 to 6, inclusive, the State also claims Tract 46, which tract bears the inscription "School Section" on the official plat.

The original survey of Section 16, T. 51 N., R. 92 W., Sixth P.M., Wyoming, was approved March 20, 1884. It was resurveyed under authority of the Resurvey Act of 1908. The official plat of such resurvey was approved August 10, 1914, and accepted October 21, 1914. The following diagram of a portion of such T. 51 N., R. 92 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

.Legend:

Solid lines on diagram show Section 16, as located and segregated by the available evidence of the original survey and redesignated as Tract 54 in accordance with the instructions for such resurvey.

Broken lines show such Section 16, as resurveyed.

Areas designated as Lot 4, Tracts 53A, 53B, 55C, 55D, 56C and 56D are not in dispute here.

Areas designated as Lots 1, 2 and 3 are additional lands claimed by the State by virtue of resurvey and embraced in oil and gas lease from State to Richfield and also embraced in oil and gas lease from United States to a third party, dated June 1, 1951.

In addition to Lots 1, 2 and 3, the State also claims Tract 54, which tract bears the inscription "School Section" on the official plat.

The original survey of Section 36, T. 51 N., R. 92 W., Sixth P.M., Wyoming was approved March 20, 1884. It was resurveyed under authority of the Resurvey Act of 1908. The official plat of such resurvey was approved August 10, 1914, and accepted October 21, 1914. The following diagram of a portion of such T. 51 N., R. 92 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

Legend:

Solid lines on diagram show Section 36, as located and segregated by the available evidence of the original survey and redesignated as Tract 47 in accordance with the instructions for such resurvey.

Broken lines show such Section 36, as resurveyed.

Shaded area shows land reconveyed to the United States by the State, accepted June 7, 1949, as base for grazing exchange under § 8 of the Act of June 28, 1934. The State retained the minerals.

Areas designated as Lot 1, Tracts 37A, 37B, 37C, 40A, 40B, 41A, 41B, 41C, and 41E are not in dispute here.

Areas designated as Lots 2 and 3 are additional lands claimed by the State by virtue of resurvey and embraced in oil and gas lease from State to Richfield and also embraced in oil and gas lease by United States to a third party, dated June 1, 1951.

In addition to Lots 2 and 3, the State also claims Tract 47, which tract bears the inscription "School Section" on the official plat.

The original survey of Section 36, T. 52 N., R. 92 W., Sixth P.M., Wyoming, was approved March 20, 1884. It was resurveyed under authority of the Resurvey Act of 1908. The official plat of such resurvey was approved August 10, 1914, and accepted October 21, 1914. The following diagram of a portion of such T. 52 N., R. 92 W., with the accompanying legend, is based on such official plat of the resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

Legend:

Solid lines on diagram show Section 36, as located and segregated by the available evidence of the original survey and redesignated as Tract 39 in accordance with the instructions for such resurvey.

Broken lines show such Section 36, as resurveyed.

Areas designated as Lots 5 and 6 are not in dispute here.

Areas designated as Lots 1, 2, 3, 4 and the SE ¼ SE ¼ are additional lands claimed by the State by virtue of resurvey and embraced in oil and gas lease from the State to Richfield and also embraced in oil and gas lease from United States to a third party, dated September 1, 1951, and terminated September 3, 1957, and presently embraced in oil and gas lease by United States to a third party, dated June 1, 1958.

In addition to Lots 1, 2, 3, 4 and the SE ¼ SE ¼, the State also claims Tract 39, which tract bears the inscription "School Section" on the official plat.

The original survey of Section 16, T. 46 N., R. 102 W., Sixth P.M., Wyoming, was approved February 23, 1884. In 1903, by Presidential Proclamation, No. 42 (32 Stat. 2030), Section 16 was placed within the Yellowstone Forest Reserve and the State thereafter selected full indemnity land, pursuant to the Act of February 28, 1891 (26 Stat. 796). Section 16 was resurveyed under authority of the Resurvey Act of 1908. The official plat of such resurvey was approved December 13, 1919, and accepted June 4, 1920. The following diagram of a portion of such T. 46 N., R. 102 W., with the accompanying legend, is based on such official plat of the

resurvey and shows the location of such section as originally surveyed, as resurveyed, the conflicting claims of the parties, and other data.

Legend:

Solid lines on diagram show position of Section 16 under the original survey, if it had been segregated.

Broken lines show such Section 16, as resurveyed.

Area designated as Tract 51 is Indemnity School Selection Land approved October 31, 1899.

Area designated as Tract 53 is land for which a patent was issued by the United States to a third party, dated May 11, 1916, no reservation of minerals.

Area designated as Tract 57 is land for which a patent was issued by the United States to a third party, dated December 1. 1898, no reservation of minerals.

Diagonal lines on diagram show public and National Forest lands of the United States in resurveyed Section 16.

Area designated as Lot 1 is additional land claimed by the State by virtue of resurvey. A patent was issued by the United States for Lot 1 to a third party, dated May 18, 1939, with minerals reserved to the United States. Lot 1 is embraced in an oil and gas lease from the State to Richfield and also embraced in an oil and gas lease by the United States to a third party, dated May 1, 1952.

In addition to Lot 1, the State also claims the indemnity land selected by it when Section 16, as originally surveyed, was placed within the Yellowstone Forest Reserve.

———◆———

The original survey of Section 16, T. 13 N., R. 105 W., Sixth P.M., Wyoming, was approved February 10, 1883. The official resurvey plat was approved November 18, 1902, and accepted February 28, 1903. The original survey placed Section 16 a considerable distance southwest of the position of Section 16, as shown by the resurvey, and no portion of the original Section 16 overlaps the resurveyed Section 16. As a result of the resurvey, the original Section 16 was segregated and designated as Lot 41. The resurveyed Section 16 was located in its normally accepted position and characterized as public lands. In addition to Section 16, the State also claims Lot 41.

In a letter dated April 4, 1924, from the Wyoming Commissioner of Public Lands to the United States Surveyor General, such Commissioner stated:

"You are advised that the position of other State lands in this township

indicate that Lot 41 was the location of original Section 16 and as the acceptance of this tract by the State would connect up other State holdings, I hereby elect to accept for the State of Wyoming Lot 41 in satisfaction of the grant of original Section 16 to the State of Wyoming."

The official resurvey plat bears a handwritten notation that "Section 16 is public lands(,) Lot 41 is School Section 16(,) See State's letter Apr. 4, 1924."

On the resurvey supplemental plat No. 2, approved February 15, 1927, the words "Public Land" are printed on Section 16. That plat also contains a printed "Index to Segregated Tracts" which lists resurveyed Lot 41 as "Designated School Section."

■■ When Congress passed the Resurvey Act of 1908, it must be presumed to have known the construction which had been placed on the Resurvey Acts of 1903 and 1905 and the effect given to such earlier Acts by the Department of the Interior and the practices and procedures followed and carried out by such Department, with respect to the lands in the original school sections and resurveyed school sections. Therefore, when Congress enacted the Resurvey Act of 1908, without substantial change in any relevant part, it manifested its approval and ratification of the administrative construction of the earlier Resurvey Acts by the Department of the Interior, the effect given thereto by such Department, and such practices and procedures.[6]

■ The long administrative practice of the State, acting through its public officials, by which it took the position that it did not have title both to the lands embraced in original school sections and the additional lands within resurveyed school sections, but outside the boundaries of the former, and the fact that the United States, in the administration of the public lands in Wyoming, acted in reliance on such State administrative practices, we think preclude the State from now asserting title both to the lands embraced in original school sections and to the additional lands within resurveyed school sections, but outside of the boundaries of the former.[7] An important consideration impelling that conclusion is the fact that to hold otherwise would create a chaotic condition with respect to titles to portions of the additional land now claimed by the State, that have been acquired by private persons from the United States.

■■ Of course, the right of a State to surrender lands acquired under an earlier grant from the Federal Government and to select from the public domain new lands in lieu thereof must be found in an Act of Congress granting such right, and, we are of the opinion that the Department of the Interior correctly construed the Resurvey Acts and administered them in accordance with the intent of Congress with respect thereto. Only clear language would warrant imputing to Congress an intention that the State would be entitled to lands embraced in an original school section and also in a resurveyed school section and thereby enlarge, in some cases very materially, the amount of the grant to the State.[8]

■ We conclude that when the boundary lines of original school sections were reestablished by resurveys thereof and such sections were identified by tract or lot numbers and the words "School Section" inscribed on such tracts or lots,

6. National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496; Salt Lake County v. Utah Copper Co., 10 Cir., 93 F.2d 127, 131; Globe Indemnity Co. v. Bruce, 10 Cir., 81 F. 2d 143, 152; 82 C.J.S. Statutes § 370, pp. 854, 855.

7. New Mexico v. Colorado, 267 U.S. 30, 41, 45 S.Ct. 202, 69 L.Ed. 499; United States v. Oregon, 295 U.S. 1, 10, 55 S.Ct. 610, 79

L.Ed. 1267; Michigan Land and Lumber Co. v. Rust, 168 U.S. 589, 596–599, 18 S.Ct. 208, 42 L.Ed. 591; State v. Hatch, 9 Utah 2d 288, 342 P.2d 1103, 1105–1108; State of Michigan v. Jackson, L. & S. R. Co., 6 Cir., 69 F. 116, 121, 122.

8. Michigan Land and Lumber Co. v. Rust, 168 U.S. 589, 603, 18 S.Ct. 208, 42 L.Ed. 591.

on the official plats of such resurveys, the State is entitled, under the grant to it of such school sections, only to the lands within such original school sections, unless it elected to waive its claim to such original school sections and to select in lieu thereof lands embraced in resurveyed school sections and in such case, it is only entitled to the lands embraced within the resurveyed school sections.

Counsel for appellants rely strongly on United States v. Aikins, D.C.S.D.Cal., 1949, 84 F.Supp. 260, affd. sub nom. United States v. Livingston, 9 Cir., 1950, 183 F.2d 192. We think the facts in the Aikins case clearly distinguish it from the instant case.

By the Act of March 3, 1853, 10 Stat. 244, Sections 16 and 36 of the public lands in California were granted to the State of California for school purposes. In 1869, Section 36, T. 29 S., R. 20 E., M.D. B. & M., and other school land sections, were surveyed under the authority of the United States by one Reed. Between the year 1869 and the year 1893, the State of California sold and issued patents for all of the land embraced in such Section 36, as located by the Reed Survey. In 1892, another official survey of the lands within such township was ordered by the United States and such survey was made by one Carpenter and approved in 1894. By the Carpenter Survey the southerly and easterly boundaries of the township were shifted south and east and the boundaries of the lands designated as Section 36 in the Reed Survey were shifted southward and eastward. As the result of such shift by the Carpenter Survey, a portion of the lands included in such Section 36 by the Reed Survey was eliminated therefrom, and additional land, not theretofore designated in any former survey as being in any Section 36, or even in the township above mentioned, was included in such Section 36. The land involved in the Aikins case, being all of such additional land, was conveyed to one Jordan by the State of California as school land on December 1, 1914, pursuant to a mandate of the Court of Appeals of the State of California, issued as the result of its decision in Jordan v. Kingsbury, 25 Cal.App. 166, 143 P. 69. Private claimants to the land in the Aikins case were the successors in interest to Jordan and in that case the United States sought to quiet the title to such land as against Jordan's successors in title. In the second survey in the Aikins case, the instructions issued to Carpenter directed him to obliterate all lines and corners made by Reed. The land included in the Carpenter Survey of such township, which was not included in the Reed Survey, was wild land, had not theretofore been surveyed, and was not in any township until the Carpenter Survey. As stated by the trial court in the Aikins case, " * * * it would have been a simple matter for the Government to have adhered to Reed's South and East lines of the township and added the overage to the township south of Township 29, and to the township east of Range 20. * * * The land in question here would thus have fallen into the northerly tier of Sections in Township 30 South, Range 20 East, and into the westerly tier of Sections in Township 29 South, Range 21 East," but it did not do so. Rather, it chose to designate the land involved in the Aikins case as being a part of such Section 36, T. 29 S., R. 20 E. Thereafter, the State of California treated such additional land in Section 36 as school land belonging to the State. The United States took no position to the contrary and made no claim to such land until it commenced its action against Aikins almost 44 years later. In the instant case, the United States relocated the original school sections and identified them on the official plats of the resurvey as either lots or tracts and designated them as school sections, unless the State elected to accept land in a resurveyed school section in lieu of the former. Where the State elected to retain original school sections, the additional lands embraced in the resurveys were identified as lots or tracts on the official plats and were regarded and administered as public lands by the United States at all times after the resurvey; and as we have heretofore shown, prior to 1957 the State at no time made any

claim to the lands involved herein and by the acts and conduct of its officials recognized that such lands were the public lands of the United States.

To have sustained the claim of the United States in the Aikins case would have invalidated a private land title that had been recognized and relied on as valid for many years. To sustain the claims of the State in the instant case would invalidate many private land titles throughout the State that have been recognized and relied on as valid for many years.

Accordingly, the judgment is affirmed.