**UNITED STATES of America,
Plaintiff,**

v.

**STATE OF WYOMING and The Richfield Oil Corporation, a corporation, Defendants.**

**Civ. No. 4304.**

United States District Court
D. Wyoming.

June 22, 1961.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., and John R. Little, Jr., Attorney-Advisor, Office of Sol., Dept. of Interior, Denver, Colo., for plaintiff.

Frank M. Gallivan, Cheyenne, Wyo., M. F. Schade and William D. Foote, Los Angeles, Cal., Norman B. Gray, Wyoming Atty. Gen., and W. M. Haight, Deputy Atty. Gen., for defendants.

KERR, District Judge.

This controversy arises out of the Act of Admission of the State of Wyoming to the Union on the Granting Act of July 10, 1890, 26 Stat. 222, and the Resurvey Acts of January 10, 1903, 32 Stat. 767, and May 29, 1908, 35 Stat. 465. The United States seeks to quiet title to lands described as Sections 16 and 36 in certain townships which it claims as public domain. The State of Wyoming asserts title to the same lands claiming that the State was granted all lands designated as Sections 16 and 36 as School Lands, and that it received additional lands identified by tract numbers by the resurveys. In other words, the State claims not only the lands resulting from the original surveys but extra lands allegedly added to the sections by the resurveys. Richfield Oil Corporation is defendant by virtue of having oil and gas leases on a portion of the lands in question. Jurisdiction of this court is invoked under 28 U.S.C. §§ 1345 and 2201.

The sole question for decision is whether the disputed parcels of lands lie within the scope of the Act of Admission of the State of Wyoming to the Union. The solution to the controversy depends upon the effect of the original surveys and of the resurveys of the townships in which the disputed Sections 16 and 36 are located. All the lands discussed herein are located in the Sixth Principal Meridian of Wyoming.

This opinion is confined to those areas, title to which is disputed, and to the evidence relevant only to those areas. In reaching this decision I have completely disregarded the irrelevant and immaterial exhibits which pertain to areas other than those joined by the pleadings. The State abandoned its claim to the lands within the boundaries of Section 16, Township 52 North, Range 92 West, in the resurvey. Likewise omitted from the controversy are nine sections designated Sections 16 and 36 in both the original surveys and in the resurveys of Townships 49, 51 and 52 North, Range 91 West, and Section 16 in Townships 50, 51 and 52 North, Range 90 West. On November 28, 1913, S. G. Hopkins, Commissioner of Public Lands of the State of Wyoming, under seal, waived "the right of the State of Wyoming to require that" said sections of "School Lands be segregated in their original Sections". At the same time the Commissioner accepted for the State of Wyoming "the said lands as described in the resurvey executed by Wilford W. Utterback". It is conceded that the area covered by those sections in the original surveys was not segregated as tracts in the resurvey; that it conforms to the same description by the resurveys; and that the State is not asserting title to land which is claimed by the United States of America. Title to that land, therefore, is not disturbed nor clouded and it does not need be quieted.

The material evidence is not in dispute. A clear picture of the facts is facilitated by the following outline of the history of the parcels of land in dispute. Except as otherwise noted, the State of Wyoming seeks to establish its title to the area in Column IV. Richfield Oil Corporation, as lessee from the State of Wyoming, asserts an interest in the lands in Sections 16 and 36 set out in parcels numbered 2, 6, 7, 8 and 9 in Column IV:

| I<br><br>Description | II<br><br>Original Survey Approved. | III<br>Resurvey Authorized and Plat Approved. | IV<br><br>Lands Segregated Upon Resurvey. |
|---|---|---|---|
| T 13 N, R 105 W (Parcel No. 1) | February 10, 1883 | Appr.: Jan. 18, 1902 | Lot 41, leaving Section 16 intact. |
| T 49 N, R 103 W (Parcel No. 2) | March 13, 1884 | Act: Jan. 10, 1903 Appr.: Aug. 8, 1907 | Lot 42, leaving Section 16 with Lots 1–7, inclusive. |
| T 50 N, R 90 W (Parcel No. 3) | December 22, 1883 | Act: May 29, 1908 Appr.: Aug. 10, 1914 | Tract 39, leaving Section 36 with Lots 1, 2, 3 & 4. |
| T 51 N, R 90 W (Parcel No. 4) | " | " | Tract 53, leaving Section 36 with Lots 1, 2, 3, 4 & 5 and other lands not claimed by defendants. |
| T 52 N, R 90 W (Parcel No. 5) | " | " | Tract 46, leaving Section 36 with Lots 1, 2, 4, 5 & 6 and other lands not claimed by defendants. |
| T 51 N, R 92 W (Parcels Nos. 6 & 7) | March 20, 1884 | " | Tract 54, leaving Section 16 with Lots 1, 2 & 3 and Tract 47, leaving Section 36 with Lots 2 & 3 and other lands not claimed by defendants. |
| T 52 N, R 92 W (Parcel No. 8) | " | " | Tract 39, leaving Section 36 with Lots 1, 2, 3 & 4; SE¼ SE¼ and other lands not claimed by defendants. |
| T 46 N, R 102 W (Parcel No. 9) | February 23, 1884 | Act: May 29, 1908 Appr.: Dec. 13, 1919 | Sec. 16 not segregated because included in Forest Reserve. State selected full indemnity lands in lieu of original Sec. 16. Upon resurvey, Lot 1, Sec. 16 not embraced in Forest Reserve. |

The identification system of the United States Government at the time of the resurveying appears to be the root of this dispute. Had the government reversed its method and identified the school land tracts segregated to the State of Wyoming as Sections 16 or 36 they would unequivocally represent the land granted to the State by the Act of July 10, 1890. The State has expressed the issue as follows: Did the State of Wyoming acquire the title to the lands identified as Sections 16 and 36 by reason of the Granting Act of 1890 upon the approval and acceptance of the official resurveys made by the General Land Office designating the lands in question as Sections 16 and 36?

It is the contention of the State that in addition to the lands segregated in the resurvey the State is entitled to own Sections 16 and 36 identified as such in both the original survey and in the resurveys. The State further urges that the resurveys included within the boundaries of the original Sections 16 and 36 the tracts of lands which had been erroneously omitted therefrom in the original surveys.

It is the position of the United States of America that it owns the lands identified as Sections 16 and 36 in the resurvey and that the State received only the segregated tracts by the grant of school sections. Its theory is that the resurveys merely identified the rights of the State already existing by the Granting Act, that they adjusted and indicated the boundaries of the state school lands, but that they did not enlarge the grants to the State. The parties agree that the purpose of the resurveys of the public lands was to correct errors that were made in the original surveys.

The evidence is convincing beyond a doubt that the lands in issue are public domain and that the State of Wyoming did not acquire title to the lands designated Sections 16 and 36 by the approval of the resurveys. There is no evidence or logic supporting the State's theory that the resurveys added to the original Sections 16 and 36 the tracts and lots

that should have been there in the first place.

■ Copies of the official plats of the eight townships in issue are prima facie evidence of the status of the lands. No attempt has been made to impeach them. See Gleason v. White, 199 U.S. 54, 25 S. Ct. 782, 50 L.Ed. 87.

On the official resurvey plats in evidence Lots 41 and 42 and the tracts listed in Column IV on the outline are identified by the words "School Section". The parties agree that the State of Wyoming properly claims title to those areas. The United States contends and the State denies, however, that such lots and tracts as segregated in the resurveys by the available evidence of the original surveys represent the full grant of land to the State under the Act of July 10, 1890.

■ The area in Section 16, Township 46 North, Range 102 West, represents a situation unique to the other lands in this controversy. The original survey of that township was approved in 1884. Consequently when Wyoming was admitted to Statehood on July 10, 1890, the provisions of the Granting Act became effective and title to School Section 16 vested immediately in the state. United States v. Wyoming et al., 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590, and cases cited therein. By Presidential Proclamation in 1903 Section 16 was designated as being within the Yellowstone Forest Reserve. Between 1913 and 1921 the State selected full indemnity land pursuant to the Act of February 28, 1891, 26 Stat. 796. The resurvey of Township 46 North, Range 102 West, was approved in 1919, by which event Lot 1 was located in Section 16 and outside the boundaries of the Forest Reserve.

The United States claims Lot 1, Township 46 North, Range 102 West, on the ground that it received title to Section 16 regardless of the amount of land embraced therein before and after the State relinquished title in return for its lieu-land. Wyoming contends that the State did not waive title to Lot 1 under the Lieu Act of 1891 because it was not

part of the base land at the time of the lieu selection. The State's contention is untenable. Notwithstanding the addition of acreage to Section 16 after the waiver, the State, by operation of law, waived its right to Section 16 in exchange for which it received title to the selected tract. The United States in return received title to the equivalent land and is entitled to enjoy the benefit of any new land located therein subsequently. State of Wyoming et al. v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742.

The official resurvey plat of Township 13 North, Range 105 West, approved by the United States Surveyor General on November 18, 1902, was introduced into evidence by the State of Wyoming. On that plat are the handwritten notations that "Section 16 is public lands" and "Lot 41 is School Section 16". The authenticity of these notations is not challenged. On the resurvey supplemental plat number 2 of the same township, approved February 15, 1927, and introduced in evidence by the State of Wyoming, the words "Public Land" are printed on Section 16. That plat also contains a printed "Index to Segregated Tracts" which lists Resurvey Lot 41 as "Designated School Section".

■ The plat of the original survey of that township was approved in 1883 and title to School Section 16 immediately vested in the State upon its admission to the Union in 1890. United States v. Wyoming, et al., supra. Patently the position of the School Section 16 was erroneous, it being located quite a distance to the east of the resurveyed Section 16. At the time of the resurvey the original school section was segregated as Lot 41, the public lands were resurveyed, Section 16 located in its normally accepted position, and characterized as public lands. This chain of events was later affirmed by a letter dated April 4, 1924, from C. H. McWhinnie, Commissioner of Public Lands for the State of Wyoming, to the United States Surveyor General written in response to the latter's request that the State advise him whether the State of Wyoming wishes resurvey Section 16 or Lot 41 which is intended to represent original School Section 16. The State, through its Commissioner of Public Lands, elected "to accept for the State of Wyoming Lot 41 in satisfaction of the grant of the original Section 16 to the State of Wyoming". This evidence cumulates to substantiate the claim of the United States of title and to controvert the State's claim to Section 16, Township 13 North, Range 105 West, as it appears in the resurvey.

It is important to note also that the official resurvey plats total the acreage in the township and break it down into the amount of acreage in the public lands, segregated lands and patented lands. In every instance the acreage of public lands includes the controversial area in Sections 16 and 36. In other words, it is the total number of acres in the township excluding the state, school and patented lands. This undisputed fact shows, therefore, that after segregation the balance of lands resurveyed in the Sections numbered 16 and 36 has been officially acknowledged and computed as public land acreage.

The instructions issued at the time of the resurveys are additional indicia of the identity of the segregated tracts with the full school land grants. According to the official resurvey plat of Township 49 North, Range 103 West, approved August 8, 1907, the resurvey was made pursuant to Contract 305 dated May 27, 1905. The Office of the United States Surveyor General issued special instructions for guidance in the work of the retracement and resurvey under that contract. These instructions directed that the school sections be surveyed out by metes and bounds and be given a serial number commencing with lot number 37 in each township. On page twelve of the instructions the following statement shows that the purpose of the resurvey was to locate the original school section grants: "In all tracts of state lands a lot number will be given each section or fractional part of a section in

the original public survey, and boundary lines will be defined upon the ground \* \* \* ".

The townships listed on the outline as Parcels numbered 3 to 8, inclusive, were resurveyed under Group number 6. On March 31, 1911, the United States Surveyor General issued instructions pursuant to the contract for Group 6 giving directions to survey out by metes and bounds the tracts to be segregated, "conforming as nearly as practicable to the boundary lines of the lands originally intended to be embraced in each private land claim, state land selection or school section, all lines being projected so as to include tracts equivalent to those of regular subdivisions". The surveyors were directed to account for each private land claim, school section and state land selection.

This federal-state conflict arose for the first time in 1957 when the State of Wyoming issued the five oil and gas leases to Richfield Oil Corporation. The State's alleged right to invade the theretofore exclusive possession and control of the United States over the leased lands was bottomed upon the decision in the case of United States v. Aikins et al., D.C.Cal.1949, 84 F.Supp. 260, affirmed sub nom. United States v. Livingston et al., 9 Cir., 1950, 183 F.2d 192.

The State argues that the Aikins case is factually parallel to the case at bar. This is not so. Basically, the Aikins case involves a different issue than that in the case at bar. In that case the government attempted to quiet title "on a survey of excess school sections". United States v. Aikins, supra, 84 F.Supp. at page 266. In the case before me, the Government seeks to quiet title to Sections 16 and 36 which were designated public lands in the resurvey after the school lands had been segregated and identified by tract and lot numbers.

In the Aikins case, the Court was confronted with land which had been surveyed for the first time, albeit by a resurvey of a township in which the disputed land was not located. In the case before me the land in dispute was the subject of an original survey and also of a resurvey. When the land in the Aikins case was surveyed it was designated as "Section 36". In conjunction with the resurvey of the land in this controversy the school sections were segregated and designated as lots and tracts; the residue of the lands between the segregated school lands and the original boundaries of Sections 16 and 36 being identified as Sections 16 and 36 and designated as public lands.

The State of Wyoming challenges this court to concur in and follow the rule expressed in the Ninth Circuit, which they construe as follows: "When the Federal Government makes a resurvey of its lands and upon the official plat of such resurvey designates portions of its lands as being within a Section 16 or 36, upon approval by the United States Land Office of the resurvey, title to such lands designated 16 and 36 upon such resurvey (except those previously disposed of), immediately passes to and vests in the State under the Granting Act of 1890".

Properly analyzed and adapted, I think the rule in the Aikins case is appropriate to the case at bar. The principle to be deduced from that case, however, is inaccurately posed by the State. The substance of the holding in the Aikins case is that the Granting Act becomes effective when the lands are identified by a survey and the approval thereof; that the designation of Sections 16 or 36 in the original survey amounts to a confirmation of the grant of school lands to the State; and that title to such newly-surveyed land as so designated passes to the State upon approval of the survey. This rule is supported by respectable authority. United States v. Morrison, 240 U.S. 192, 36 S.Ct. 326, 60 L.Ed. 599, and cases cited therein.

■ The title in the State to the school sections vested at the date of the original surveys and their approval, or when the State was admitted to the Union, where the surveys were made

prior to 1890. United States v. Morrison, supra; Heydenfeldt v. Daney Gold & Silver Mining Company, 1876, 93 U.S. 634, 23 L.Ed. 995. The boundaries of the school sections were created by the original surveys; they were redefined when the resurvey shifted their location in relation to the entire township. There is nothing obnoxious to an adjustment of the proper location of a federal grant of lands to a state by means of a resurvey. Michigan Land & Lumber Company v. Rust, 1897, 168 U.S. 589, 18 S.Ct. 208, 42 L.Ed. 591.

■ All the land in dispute was surveyed and the plats of such surveys were approved in 1883 and 1884. Each original survey plat of the townships in dispute contains a Section 16 and 36. The parties agree that the original surveys were inaccurate, erroneous or obliterated. At the time of the resurvey, therefore, the area in dispute was, practically speaking, unsurveyed public land. Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L. Ed. 332. On the other hand, the area not in dispute was susceptible of ascertainment. By the system of segregation, that is, the separation of the state-owned lands from the public domain, the State's vested right in the school sections was preserved. No vested rights were impaired.

Admittedly, the school section tracts were identifiable in their original locations. When the resurveys of public lands were undertaken, the school sections were segregated according to the best evidence available from the original surveys and were given tract or lot numbers. These segregated tracts were thereby considered to be coincident with and properly describing the original school sections. The segregation of the school sections, other state lands, and lands of individual claimants was made to conform as nearly as possible to the boundary lines of the lands which the state and each claimant originally intended should be embraced in its or his tended should be embraced in its or his

entry. The balance of the public lands were thereafter resurveyed retaining their status as public domain but perpetuating the original section numbers 16 and 36.

There is no magic in the numbers "16" and "36". The tenor of the Act of July 10, 1890, infers a grant of legal subdivisions or their equivalents. In construing the Granting Act of 1890 it is wiser to apply good common sense to promote and preserve justice, than to subserve hollow technicalities and arrive at absurd, unjust results.

The State is entitled to its quota of school lands, but only to its full quota. The mere designation of the lands in dispute as Sections 16 and 36 did not change the character of their title. See, State of Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954. They were resurveyed as public lands and remained such unless or until disposed of by the United States.

Richfield Oil Corporation has insulated its investment in the oil and gas interests in a portion of the lands in dispute. Not only have oil and gas leases been issued to it by the State of Wyoming, but it has also acquired interests in the leases issued by the United States which embrace the same area in controversy.

I hold that the segregated school lands and the lands selected in lieu of Section 16, Township 46 North, Range 102 West, represent the full school land grant from the United States to the State of Wyoming, and that the United States is entitled to the relief prayed for, within the limitations of this memorandum opinion, as to the parties joined by the pleadings and as to the area in dispute.

Counsel for plaintiff will prepare findings of fact and conclusions of law in conformity with this memorandum and submit same, together with judgment, within twenty (20) days from the date hereof and the clerk will enter an order accordingly.