No. 03-800

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 337

POWELL COUNTY and RALPH and CHARLOTTE SIEVERS,

        Plaintiffs and Respondents,

    v.

5 ROCKIN' MS ANGUS RANCH, INC.,

        Defendant, Third-Party Plaintiff and Appellant,

    v.

DONALD T. TAMCKE and SHARON TAMCKE,

        Third-Party Defendants and Respondents.

APPEAL FROM:    District Court of the Third Judicial District,
In and for the County of Powell, Cause No. DV 2002-27,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jon E. Doak, Doak & Associates, Billings, Montana

    For Respondents Powell County and Sievers:

        Bernard J. "Ben" Everett, Knight, Dahood, Everett & Sievers, Anaconda, Montana

        Christopher G. Miller, Powell County Attorney, Deer Lodge, Montana

    For Respondents Tamcke:

        W. Arthur Graham, Attorney at Law, Missoula, Montana

        Submitted on Briefs:  June 15, 2004
                Decided:  November 30, 2004

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Plaintiffs and Respondents Ralph and Charlotte Sievers ("Sievers") and Powell County initiated this action seeking declaratory judgment that two roads crossing through Defendant and Appellant 5 Rockin' MS Angus Ranch Inc.'s, (the "Ranch") property are public roads. Sievers and Powell County (collectively "Respondents") further prayed for an order enjoining the Ranch from obstructing access to these roads.

¶2 The Ranch answered denying the roads were public roads. All parties moved for summary judgment.

¶3 The District Court granted summary judgment in favor of Respondents declaring the roads public and enjoining the Ranch from impeding or threatening to impede public access to such roads. The District Court denied the Ranch's motion for summary judgment. The Ranch appeals. We affirm the District Court.

¶4 The Ranch raises several issues on appeal which we restate as follows:

¶5 1. Did the District Court err in granting summary judgment declaring the Bielenberg and Danielsville roads public roads?

¶6 2. Did the District Court err in denying the Ranch's motion for summary judgment, that there was no ability to dedicate a road over Section 16?

¶7 3. Did the District Court err in finding a public prescriptive easement over Sections 15 and 17?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶8 The Ranch purchased the Powell County land in question in 2000. Third-party Defendants Donald and Sharon Tamcke were the Ranch's predecessors in interest. The sale

agreement included Tamckes' assignment of a state lease on Section 16.

¶9      Sievers own Section 8, of Township 6 North, Range 10 West. Sievers' property is surrounded by the Ranch's property to the West, East and South. Sievers allege they use public roads that cross through the Ranch's property and that the Ranch has erected obstructions including fences and/or locked gates across the allegedly public roads.

¶10     Sievers use a road crossing the Ranch's property at Section 15 to access their property. There is no dispute over Sievers' right to access their property via this route, but the Ranch argues it is not a public road.

¶11     Respondents commenced this action seeking declaratory judgment and injunctive relief to establish that the alleged Bielenberg and Danielsville roads are public roads created in 1889 and 1903 respectively. The Ranch responded by denying the described roads are public and counterclaimed to quiet title to its property.

¶12     Respondents filed a motion for summary judgment. The Ranch filed a cross-motion for summary judgment. The District Court granted Respondents' motion for summary judgment, denied the Ranch's cross-motion, and granted Respondents' motion for an injunction. This appeal followed.

¶13     The general[1] location of the roads in question is shown below:

---

[1]This illustration's only purpose is to show the approximate location of roads' progress through the parties' property. It is not exact.



Township 6 North, Range 10 West

**Ownership**

- The Ranch
- Sievers
- State of Montana

**Roads**

- Bielenberg Road
- Danielsville Road

## STANDARD OF REVIEW

¶14    We review a district court's decision to grant or deny a Motion for Summary Judgment *de novo*. *Associated Press v. Crofts,* 2004 MT 120, ¶ 11, 321 Mont. 193, ¶ 11, 89 P.3d 971, ¶ 11. To prevail, the moving party must demonstrate that no genuine issues of material fact exist; if successful, the burden shifts to the nonmoving party to establish that genuine issues of material fact exist. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Unsupported conclusory or speculative statements on the part of the non-moving party as to what may have happened do not constitute issues of fact precluding summary judgment. *Nelson v. Montana Power Co.* (1993), 256 Mont. 409, 412, 847 P.2d 284, 286. If no genuine issues of fact exist, the court must determine whether the moving party is entitled to judgment as a matter of law. *Bruner,* 272 Mont. at 264-65, 900 P.2d at 903.

## DISCUSSION

4

**ISSUE 1**

¶15 Did the District Court err in granting summary judgment declaring the Bielenberg and Danielsville roads public roads?

¶16 The Ranch first argues material issues of disputed fact exist concerning the "beginning, route, termini, dedication and opening of both roads" precluding summary judgment. However, the District Court concluded, and we agree, the record shows no material issues in dispute.

¶17 There are four ways a public highway could be established prior to 1895: "1) by action of the proper authorities in accordance with statutory provisions; 2) by prescriptive use for the period of time required by statute; 3) by opening and dedication by the private owner; and 4) on partition of real property." *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 21, 301 Mont. 81, ¶ 21, 10 P.3d 794, ¶ 21.

¶18 There is no issue of material fact concerning whether the Bielenberg Road was statutorily created and was opened to the public on June 3, 1889. Respondents introduced Deer Lodge County Commissioners' meeting minutes from October 16, 1888, March 21, 1889, June 3, 1889, and Powell County Commissioners' Records from February 9, 1972, to establish the creation and dedication of the Bielenberg Road. To assist in establishing the "beginning, route, [and] termini," Respondents introduced the February 21, 1900, Bargain and Sale Deed from Henry and Margaret Quinlan to Patrick Joseph Quinlan. Respondents further reinforce their argument by producing several forest maps noting the location of the alleged public roads and providing the affidavit testimony of Charles Vanisko, a county resident since 1924. Mr. Vanisko states that throughout his lifetime he has used the Quinlan

Road to "get firewood and attend school" and that he has observed others use the road for similar reasons. Mr. Vanisko described the location of the road as follows:

> The Quinlan Road begins at its intersection with the road now called Yellowstone Trail. The course of the road travels west, abutting property which was previously owned by the Quinlans. The road continues in a westerly direction past the Quinlan School House and over a cattle guard . . . The road continues in a westerly direction, along the property line of the old Martin property. The old Martin property is now owned by Ralph and Charlotte Sievers. The road continues west, through the Kelly property into the mountains and the forest service land. It is my understanding that the land owned by Mr. Kelly at one time is now owned by 5 Rockin MS Angus Ranch.

¶19 Mr. Vanisko highlighted the Quinlan Road on maps attached to his affidavit. Those maps indicate that the Quinlan Road follows the same route as the Bielenberg Road. Uncontested evidence submitted by Respondents indicates that the Bielenberg Road is also known as the Quinlan Road and/or Upper Race Track Road. There was no objection to the admission of any of this evidence.

¶20 The present dispute regarding allegedly public roads running through these sections is not the first. On September 10, 1993, Powell County Attorney, Christopher Miller, Don Tamcke, Ralph Sievers and two Powell County Commissions met to discuss the status of the Bielenberg Road. Correspondence between the above-mentioned individuals, as provided by the Ranch, indicates those present agreed "Bielenberg Road is a county road from it's [sic] eastern terminus to the corner common to sections 8, 9, 16, & 17."

¶21 In 1903, the relevant road creating statutes were Sections 2750 through 2771, Political Code of 1895 (repealed in 1922).

> These statutes provide that ten freeholders can petition the county commissioner to establish a road described in the petition. The county commissioners then must appoint three persons to view the road and make

6

recommendations on the need for and feasibility of building the proposed road. The statutes also provided for a hearing so the public could make its views known to the commissioners. If the commissioners decide in favor of a road, they order the road opened and order payment to the consenting landowners. In the case of nonconsenting landowners, they order payment after condemnation proceedings are completed. The statutes also required that either a written conveyance of the right-of-way be filed in the office of the county clerk and recorder or that a copy of the judgment be filed and recorded by the clerk in the event that the road is acquired by condemnation proceedings.

*Reid v. Park County* (1981), 192 Mont. 231, 234-35, 627 P.2d 1210, 1212-13.

¶22    Respondents introduced evidence establishing Danielsville Road was statutorily created and declared public in 1903.  To establish Danielsville Road's creation and dedication, Respondents relied upon Commissioners' minutes from September 24, 1902, December 3, 1902, and June 2, 1903.  Respondents also produced maps locating the site of the historic town of Danielsville.  This evidence was unchallenged by the Ranch.

¶23    Respondents argue even if procedural problems existed in the creation and dedication of these roads, such problems were cured by § 2600, Montana Political Code of 1895 (codified in 1947 at RCM § 32-103 and  repealed in 1959).  We agree that § 2600 served to cure any procedural defects in the creation and dedication of the Bielenberg and Danielsville roads.  *See Garrison v. Lincoln County*, 2003 MT 227, ¶ 15,  317 Mont. 190, ¶ 15, 77 P.3d 163, ¶ 15; *Reid*, 192 Mont. at 234, 627 P.2d at 1212.  Section 2600 provides:

> All highways, roads, . . . laid out or erected by the public, or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways.

¶24    This Court ruled in *State v. Auchard* (1898), 22 Mont. 14, 55 P. 361, that § 2600 will not cure a jurisdictional defect in the establishment of a public road.  However, under our

7

more recent jurisprudence, this jurisdictional requirement is satisfied if "the record taken as a whole shows that a public road was created." *Reid*, 192 Mont. at 236, 627 P.2d at 1213 (overruling *Auchard*, 22 Mont. 14, 55 P. 361, and *Warren v. Chouteau County* (1928), 82 Mont. 115, 265 P. 676). The *Reid* doctrine applies in those limited circumstances where the road in question was created many years ago; thus, too onerous a burden would be imposed if the party attempting to prove construction and dedication of a public road was forced to produce a complete record of the proceedings. *Reid,* 192 Mont. at 234-36, 627 P.2d at 1212-13.

¶25    In *Reid*, the documents in question pertained to a road dedicated in 1905. *Reid,* 192 Mont. at 232, 627 P.2d at 1211. Here, like in *Reid*, requiring Respondents to produce documentary evidence from the late 1800s and early 1900s illustrating strict compliance is impracticable. Therefore, the District Court properly considered whether the record "taken as a whole" indicated a public road was created.

¶26    In *Reid*, the record failed to show the disputed road was created by the requisite ten petitioners; nor, that each petitioner was a freeholder. *Reid,* 192 Mont. at 236, 627 P.2d at 1213. The record further failed to indicate the commissioners gave notice to the affected landowners. *Reid,* 192 Mont. at 233, 627 P.2d at 1212. Despite these procedural problems, we held the disputed road was in fact a county road established both through statutory proceedings and also through prescriptive use. *See Reid,* 192 Mont. at 242, 627 P.2d at 1216; *see also Garrison*, 2003 MT 227, ¶ 13, 317 Mont. 190, ¶ 13, 77 P.3d 163, ¶ 13.

¶27    In *Garrison,* inconsistencies between the path of the road as described in the petition, the path described by the viewers and the road as it presently exists were insufficient to

8

destroy the road's public status. *Garrison*, ¶ 21. "Discrepancies in the description or location of the road are not sufficient to turn this county road into private property." *Garrison*, ¶ 21.

¶28 The record sufficiently establishes the creation and dedication of the roads at issue. The District Court was correct in concluding there were no material facts in dispute concerning whether the roads were properly created.

## ISSUE 2

¶29 Did the District Court err in denying the Ranch's motion for summary judgment, that there was no ability to dedicate a road over Section 16?

¶30 The Ranch next asserts the District Court erred in denying its cross-motion for summary judgment because it argues that it is "undisputed Powell County had no authority to dedicate either road over Section 16," a school section now owned by the State of Montana.

¶31 Until Montana became a state, title to Section 16 remained in the United States leaving it available for public road construction pursuant to congressional grant codified at § 2477, Revised Statutes of the United States (1866). Section 2477 provides: "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

¶32 Section 1946, Revised Statutes of the United States, codified the congressional intention to reserve certain sections in the Montana Territory for the schools. That statute provides:

Sections numbered sixteen and thirty-six, in each township of the Territories

9

of New Mexico, Utah, Colorado, Dakota, Arizona, Idaho, Montana, and Wyoming **shall be reserved** for the purpose of being applied to schools in the several Territories herein named, and in the States and Territories hereafter to be erected out of the same. [Emphasis added.]

The provisional language contained in this statute was not a present grant of title to a territory or a state.

¶33 Further, as evidenced by § 10 of the Enabling Act of February 22, 1889 (25 Stat 676, ch. 180), title to those lands remained with the United States until the individual state was admitted into the Union. That act provides:

That **upon the admission of each of said states into the Union** sections numbered sixteen and thirty-six in every township of said proposed states, and where such section, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of congress, other lands equivalent thereto, in legal subdivisions of not less than one-quarter section and as contiguous as may be to the section in lieu of which the same is taken, **are hereby granted to said states** for the support of common schools . . . . [Emphasis added.]

Montana accepted this grant in § 7, Ordinance No. I attached to the 1889 Montana Constitution. The Montana Constitution and its appendices were ratified by the people of Montana on October 1, 1889. Thus, prior to statehood, the United States retained authority over these sections.

¶34 Because the land had not yet been conveyed to the State, the County Commissioners had authority to create public roads across Section 16 in June of 1889, pursuant to § 2477. *See Peterson v. Baker* (Wash. 1905), 81 P. 681, 682; *Riverside Township v. Newton* (S.D. 1898), 75 N.W. 899.

¶35 Montana was admitted into the Union on November 8, 1889. Bielenberg Road was declared a public road on June 3, 1889, months prior to Montana's statehood. The maps

in evidence illustrate Danielsville Road follows the same path and utilizes the same right-of-way as Bielenberg Road through Section 16. Thus, the Deer Lodge County Commissioners had the authority to accept the invitation extended by Congress in § 2477 to create the road, and they did so.

¶36    The survey of Section 16 of Township 6 North, Range 10 West was approved by the Surveyor General of the United States on July 5, 1869. The Ranch argues the "school trust" sections were no longer "public lands, not reserved for public uses" contemplated by § 2477, Revised Statutes of the United States, once the Government Land Office Survey of Township 6 North, Range 10 West in 1869 was accepted. This argument is not reconcilable with the statutory authority discussed above; nor the case law discussed below.

¶37    In an analogous case, a Federal District Court in Wyoming was faced with a dispute regarding a school section and when title to the section transferred to the state. *United States v. Wyoming* (D.C.Wyo. 1961)*, 195 F.Supp. 692, 695, *aff'd* 310 F.2d 566 (10th Cir. 1962) *cert denied* 372 U.S. 953 (1963). The original survey of the relevant township was approved in 1884, before Wyoming was admitted to the Union. *Wyoming,* 195 F.Supp. at 695. That court held that "when Wyoming was admitted to Statehood on July 10, 1890, the provisions of the Granting Act became effective and title to School Section 16 vested immediately in the state." *Wyoming,* 195 F.Supp. at 695 citing *United States v. Wyoming* (1947), 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590. There, the court went on to note "[t]he title in the State to the school sections vested at the date of the original surveys and their approval, or when the State was admitted to the Union, where the surveys were made

11

prior to 1890." *Wyoming,* 195 F.Supp. at 697-98 citing *United States v. Morrison* (1916), 240 U.S. 192, 36 S.Ct. 326, 60 L.Ed 599; *Heydenfeldt v. Daney Gold & Silver Mining Co.* (1876), 93 U.S. 634, 23 L.Ed. 995.

¶38    Similarly, in *Peterson v. Baker*, the Supreme Court of Washington held that § 2477, Revised Statutes of the United States, provided authority to create a public highway across a school section. *Peterson,* 81 P. 681, 683. That court determined that school lands in the territory of Washington reserved for public uses by § 1947, Revised Statutes of the United States, were not exempt from the operation of § 2477. *Peterson,* 81 P. at 682. Although Petitioner argues this case is inapplicable, the "reservation" language in the Statutes reserving school land for Washington and that for Montana is similar.[2] In *Peterson*, the court went on to say the act was "simply a declaration of governmental policy, and the title to sections 16 and 36 thereafter remained in the general government." Such lands were not "reserved for public uses" within the meaning of § 2477. *Peterson*, 81 P. at 682-83.

¶39    To support its argument that the Commissioners lacked authority to dedicate a

---

[2]Section 1946, Revised Statutes of the United States, provides:

> Sections numbered sixteen and thirty-six, in each township of the Territories of New Mexico, Utah, Colorado, Dakota, Arizona, Idaho, Montana, and Wyoming **shall be reserved** for the purpose of being applied to schools in the several Territories herein named, and in the States and Territories hereafter to be erected out of the same. [Emphasis added.]

Compare with Section 1947, Revised Statutes of the United States, providing:

> Sections numbered sixteen and thirty-six in each township of Washington Territory **shall be reserved** for the purpose of being applied to common schools in that Territory. [Emphasis added.]

12

public road over Section 16 in 1889, the Ranch relies upon the affidavit testimony of Lisa Axline. Ms. Axline is an employee of the Montana Department of Natural Resources and Conservation. Ms. Axline opines that no authority existed for the Commissioners to dedicate a road across Section 16. However, to survive summary judgment, the nonmoving party must set forth evidence sufficient to raise a genuine issue of material fact, "conclusions of law will not suffice . . . ." *Morales v. Tuomi* (1985), 214 Mont. 419, 424, 693 P.2d 532, 535. Ms. Axline's affidavit is a legal opinion, unsupported by a correct legal analysis.

¶40 We agree with the District Court's legal analysis that Deer Lodge County had authority to dedicate a road across Section 16 of Township 6 North, Range 10 West in June of 1889.

¶41 The Ranch also asserts the Commissioners had no authority to dedicate a road over Sections 15 and 17 in 1889 or 1903 as those lands were reserved for the railroad.

¶42 Congress granted patents to Sections 15 and 17 to the Northern Pacific Railroad on July 19, 1899. Like its argument regarding Section 16, the Ranch asserts that upon the approval of the G.L.O. plat of Township 6 North, Range 10 West in July of 1869, Sections 15 and 17 were removed from the application of § 2477, Revised Statutes of the United States. However, we need not address this issue as we affirm the District Court's conclusion that a prescriptive easement was established across Sections 15 and 17.

### ISSUE THREE

¶43 Did the District Court err in finding a public prescriptive easement?

¶44 Finally, the Ranch argues "disputed issues of fact regarding proof of prescriptive

13

easement" exist precluding the District Court's finding of a prescriptive easement over Sections 15 and 17.

¶45 The District Court concluded there were no material facts in dispute and a prescriptive easement existed across Sections 15 and 17. This conclusion was based, in part, upon its finding that the County had maintained the roads since 1972. The District Court further concluded "[t]he roads across section 15 and 17 have been and continue to be openly used by the public and the Plaintiffs' Sievers'."

¶46 A party claiming an easement by prescription must prove the use of the road was open, notorious, exclusive, adverse, continuous and uninterrupted for the complete statutory period. *Heller v. Gremaux,* 2002 MT 199, ¶ 12, 311 Mont. 178, ¶ 12, 53 P.3d 1259, ¶ 12. To establish adverse use prior to 1953, the relevant statutory period was ten years. *Heller,* ¶ 12. Since 1953, the statutory period required to establish adverse use or possession is five years. Section 70-19-404, MCA.

> That the public may acquire the right by prescription to pass over private land is undisputed and such is the law in Montana. To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner. . . ." [Citation omitted.]

*McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 37, 301 Mont. 81, ¶ 37, 10 P.3d 794, ¶ 37. Here, the District Court concluded these requirements were satisfied.

¶47 The Ranch admits that a road which they argue is "not public and the county had only recently begun maintaining" provides access to Section 8, Township 6 North, Range 10 West, owned by Sievers. This road, the Ranch indicates, is "running northwest from

14

the county road in the NW 1/4 of Section 15, across the NE 1/4 of the state section (Sec. 16, T.6N., R.10W.), and along the line between Sections 9 and 16 to the corner common to Sections 8, 9, 16 and 17." The Ranch's mere denial of the public nature of the road is insufficient to raise a genuine issue of material fact sufficient to withstand summary judgment.

¶48 The only evidence in support of the Ranch's position is the affidavit of Michael Simpson. Mr. Simpson is the president of the Ranch and he and his wife are its sole shareholders. Mr. Simpson's affidavit provides, in part, as follows:

> Throughout our negotiations and due diligence inspections regarding the Tamcke property, we were informed by the Tamckes and their broker that access to the Tamcke ranch was via a county-maintained road known as the "Racetrack Road" running from Interstate 90 to the east, along the line between Sections 21, and 22, Township 6 North, Range 10 West, diagonally across Section 15 past the Tamcke ranch headquarters and on to the Montana State Prison Ranch; and that access to the Vanisko parcel was via a county-maintained road that ran along the south boundary of Sections 20 and 21, then northwest through the Vanisko parcel in Section 18 to the Deer Lodge National Forest boundary where the road turned into a National Forest Road. . . . Don Tamcke also told me that the county had only in recent years maintained a road that Don said was not public running west from the county road in Section 15, across the NE 1/4 of state section 16, and along the line between Sections 9 and 16 to provide access to Section 8, which Don told me was owned by Dr. Ralph Sievers.

Simpson Affidavit, ¶ 10.

¶49 Here, Mr. Simpson did nothing more than offer his own conclusory hearsay statements claiming that Don Tamcke (the previous property owner) told him that the disputed roads were not public. Further, the Ranch does not challenge the evidence submitted by Respondents illustrating County Commissioner action in regards to these roads. The Ranch merely asserts that such actions were inadequate to create public roads. The

15

evidence submitted by the Ranch is insufficient to create a genuine issue of material fact. *See Schumacker v. Meridian Oil Co.,* 1998 MT 79, ¶ 15, 288 Mont. 217, ¶ 15, 956 P.2d 1370, ¶ 15 (mere denial, speculation, or conclusory statements are insufficient to raise a genuine issue of material fact); *see also Thornton v. Songstad* (1994), 263 Mont. 390, 398, 868 P.2d 633, 638 (hearsay statements in affidavit insufficient to create genuine issue of material fact precluding summary judgment); *Eberl v. Scofield* (1990), 244 Mont. 515, 519, 798 P.2d 536, 538 (determining district court was correct in striking hearsay statements from affidavit opposing summary judgment).

¶50 In support of its prescription argument, Respondents submitted the affidavit of Charles Vanisko. Mr. Vanisko was born on December 3, 1924, and has resided in the Deer Lodge Valley throughout his life. Mr. Vanisko stated he is familiar with the road referred to as Quinlan Road. Mr. Vanisko highlighted this road on maps attached to his affidavit. Those maps indicate that the Quinlan Road is the same as the Bielenberg Road and is marked on the map as Bielenberg Canyon. Mr. Vanisko testified the Quinlan Road travels West from the Sievers' property through the Ranch property into the mountains and the forest service land. Mr. Vanisko stated he traveled this road frequently throughout his residency to access the mountains, obtain firewood, and to attend school. Mr. Vanisko also stated other families similarly used the road to access the timberland for firewood and to attend school.

¶51 Sievers submit their own affidavit stating the Bielenberg Road through sections 15, 16, and 17, also known as the Quinlan Road or Upper Race Track Road, is the only means of access to their home and they utilize this access route daily. Sievers go on to assert that

16

the public routinely uses the Bielenberg Road over sections 15, 16, and 17; utility employees utilize the road to provide service and make repairs; and that the State granted them an easement for telephone wires following the Road.

¶52    On September 10, 1993, Powell County Attorney, Christopher Miller, Don Tamcke (Third-Party Defendants/Respondents), Ralph Sievers (Plaintiffs/Respondents) and two Powell County Commissions met to discuss the status of the Bielenberg Road. Correspondence between the above mentioned individuals, as provided by the Ranch, indicates those present agreed that "Bielenberg Road is a county road from it's [sic] eastern terminus to the corner common to sections 8, 9, 16, & 17."

¶53    Finally, Respondents introduced a 1972 Powell County Board of County Commissioners resolution assuming control over and the maintenance of Bielenberg Road and Quinlan Lane Road.

¶54    Based upon the record before the District Court, we conclude there are no material facts in dispute and the District Court did not err in granting summary judgment to Respondents.

## CONCLUSION

¶55    The District Court is affirmed.

/S/ JOHN WARNER

We Concur:

17

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE